UNITED STATES of America, Appellee,

v.

Daniel LEE, a/k/a "Monkey", Appellant.

No. 537, Docket 86–1346.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1986.

Decided May 18, 1987.

David Gordon, New York City, for appellant.

Steven A. Standiford, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y.; Bruce A. Green, Asst. U.S. Atty.; Nancy E. Ryan and Ellen M. Corcella, Sp. Asst. U.S. Attys., New York City, of counsel), for appellee.

Before OAKES, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal we are called upon to decide for the first time whether there should be a burden of proof established—and, if so, what burden—for disputed allegations in presentence reports. This is a matter of some significance since the great majority of defendants plead guilty and are sentenced based upon information contained in such reports. To decide these questions we must take into account and fairly resolve the tension between due process, which stands like a tower guarding the boundaries of individual rights at sentencing, and broad judicial discretion that tends on occasion to encroach on those boundaries. In concluding that there should be a definite standard of proof and that the standard should be preponderance of the evidence, we believe the differing interests these concepts signify—protection of individual rights versus the prompt and efficient administration of criminal justice—have been fairly reconciled.

Daniel Lee appeals from a judgment of conviction of July 31, 1986 insofar as it imposed sentence on him after his guilty plea entered in the Southern District of New York before District Court Judge Robert W. Sweet. Appellant was charged in an indictment together with 24 co-defendants for violations of the Racketeer Influenced and Corrupt Organization Act

(RICO), 18 U.S.C. §§ 1961, 1962(c), (d) (1982). The principal claim raised on appeal is that when the district court sentenced appellant it relied on a finding that he participated in a particular racketeering act that he had denied committing. Such finding, Lee argues, was predicated on inadmissible hearsay statements in a presentence report without proof beyond a reasonable doubt or by clear and convincing evidence. Because a 20–year sentence was imposed based on that finding, appellant contends that his right to due process of law was thereby violated. For the reasons stated below, we find no such deprivation. Hence we affirm.

## I BACKGROUND

From 1971 to late 1982 a violent Chinese youth gang known as the "Ghost Shadows" terrorized the inhabitants and business people in Manhattan's Chinatown. During that 11–year period the Ghost Shadows were charged with committing 13 murders and numerous other violent acts including robbery, kidnapping and extortion. As a result of intense police and prosecutorial effort, an indictment was filed in April 1986 charging numerous Ghost Shadows including appellant Lee with RICO violations. The indictment consisted of 12 counts. Count one set forth 85 separate acts of racketeering that identified—as part of the pattern of racketeering activity—each substantive crime and the individual defendants charged with committing it. Count two charged all 25 defendants with being members of the enterprise (Ghost Shadows) and, as such, conspiring to conduct the affairs of the enterprise through a pattern of racketeering activity. The other counts of the indictment related to various other defendants, not including Lee.

In count one appellant was charged with being a "senior member" of the Ghost Shadows and committing five racketeering acts as follows: Act I charged Lee and all of his co-defendants with extortion and conspiracy to extort money, goods and services from stores, businesses and restaurants in and around Chinatown in Manhattan between 1977 and 1982; Act 2 charged that

Lee and his co-defendants conducted, managed and supervised illegal gambling businesses in Chinatown between 1975 and 1982; Act 25 charged Lee and other defendants with extortion and conspiracy to extort money from the Golden Boat restaurant and nightclub in 1978 and 1979; Act 37 charged Lee and other members of the Ghost Shadows with conspiracy to kill members of a rival Chinatown gang; Act 53 charged that in January 1980 Lee and three other Ghost Shadows, acting on instructions from a gang leader, kidnapped two young men from Manhattan's Chinatown, drove them to Brooklyn and there murdered them.

Lee plead guilty before Judge Sweet on April 30, 1986 to counts one and two of the indictment. In his plea Lee admitted committing only two of the five acts with which he was charged in count one. He stated that he had supervised illegal gambling as charged in Act 2 and had extorted money from the Golden Boat restaurant as alleged in Act 25. Lee was sentenced on July 31, 1986. Prior to that date, the government submitted a letter to the sentencing court in which it recommended that appellant be given a 40–year sentence. The reasons advanced for this heavy penalty were Lee's status as a "senior" member of the organization, his prior record of felony convictions, and the five racketeering acts charged in the indictment, "one of which was a double murder." The government also furnished the court and defense counsel with an extensive 46–page sentencing memorandum. The first half of that report describes the history, structure and operation of the Ghost Shadows generally. The second half dealt with appellant specifically. The latter portion of this memorandum described the nature and extent of Lee's involvement with the Ghost Shadows, his prior criminal record, and gave details concerning the particular racketeering acts charged against him in the present indictment.

The district court concluded at the sentencing hearing that Lee had participated in the double murder charged in Act 53 of count one and—acknowledging that "this major consideration does affect the punish-

ment to be meted out"—imposed the maximum 20–year sentence following appellant's guilty plea to count one. The four-year consecutive sentence resulted from appellant's guilty plea to conspiracy charged in count two.

## II GENERAL CONCEPTS AT SENTENCING

On appeal, Lee contends that the district court violated his due process rights by setting a sentence predicated on the insufficiently proven finding that he participated in a double murder. Appellant argues that a sentencing court cannot make a finding from information contained in a presentence report unless there is before it proof beyond a reasonable doubt or at least by clear and convincing evidence. In this case, he asserts, his participation was not even demonstrated by a preponderance of the evidence. Thus, the issue is whether the district court had before it sufficient evidence to justify its finding that Lee participated in a crime infinitely more serious than those to which he admitted in his guilty plea.

### A. *Judicial Discretion and Due Process Concerns*

 Within the frame of procedural due process, a district court judge's discretion when imposing sentence is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Any circumstance that aids the sentencing court in deriving a more complete and true picture regarding the convicted person's background, history, or behavior is properly considered. *See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976). For that reason, hearsay statements, other crimes for which the defendant was neither tried nor convicted, and crimes charged that resulted in acquittal may be used by the sentencing court in determining sentence. *See United States v. Pugliese,* 805

F.2d 1117, 1122 (2d Cir.1986). Thus, for the sentencing court to consider such unlimited kinds of information—clearly including Lee's unadmitted participation in a double murder—does not in and of itself offend a defendant's due process rights.

 Yet, because sentencing is a critical stage in a criminal proceeding a convicted defendant standing before a sentencing judge still remains wrapped in his right to procedural due process, *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and may question the procedure leading to the imposition of his sentence. *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion). Due process is violated when the information on which the defendant is sentenced is "materially untrue" or is, in fact, "misinformation." *See Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Congress has recently made it plain that since district courts rely heavily on presentence reports, they must "be completely accurate in every material respect." H.R.Rep. No. 247, 94th Cong., 1st Sess. 18, *reprinted in* 1975 U.S. Code Cong. & Ad. News 674, 690. From this it follows that a sentencing court is required to assure itself that the information upon which it relies when fixing sentence is reliable and accurate. *United States v. Pugliese,* 805 F.2d at 1124.

### B. *What Process is Due*

Having briefly explored a defendant's right to question the procedure used at his sentencing and the broad discretion of the sentencing court, we consider what process is due a guilty defendant at sentencing. To answer that question we must balance (1) the nature of the individual interest, (2) the risk of an erroneous deprivation of that interest through the procedure used, (3) the value of additional safeguards, and (4) the government's interest, including fiscal and administrative burdens. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Obviously, appellant Lee's interest in his sentence could not be greater because his sentence determines in large measure his future liberty.

This first factor is balanced to some extent by the fourth factor—the government's interest. In this case particularly the record supplies ample reason for imposing appropriately heavy sentences on the most violent of those Ghost Shadows members who plead guilty to acts which terrorized an entire section of Manhattan. The question that remains to be resolved from the second and third factors may be summarized: Did the procedures used by the district court in enhancing appellant's sentence adequately insure that there was no erroneous deprivation of his liberty interest? We think the answer to that question is "yes"— the procedures used here were adequate.

We begin by analyzing those procedures. A convicted defendant at sentencing has a right to challenge the accuracy of the government's proffered facts regarding his participation in the sentence-enhancing crime. This right derives from an interest in ensuring reliability of information used at sentencing. To insure that reliability Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure requires that a defendant be able to challenge the government's proffer, which it submits to corroborate the presentence information before the court. We have previously observed that the defendant's challenge may take the form of countering affidavits, letters, or other written submissions; it may consist of the defendant and/or counsel, as in the instant case, directing argument and comment to the court; there may simply be a cross-examination of witnesses, or a full-blown evidentiary hearing. *See Pugliese*, 805 F.2d at 1123.

Whatever form the defendant's challenge to the government's proffer takes, the district court must ensure that the defendant has an effective opportunity to rebut allegations likely to affect the sentence. *Id.* In this case Lee—perhaps as a matter of strategy—declined Judge Sweet's repeated offers to conduct a full hearing that would have put the government to its proof. Moreover, the district court is under no duty to conduct a full-blown evidentiary hearing in each instance where information in a presentence report is challenged. Nor does the convicted defendant have an absolute right to demand that kind of hearing. *Id.* at 1123. We are satisfied that here the district court afforded appellant a full opportunity through argument addressed to the court to rebut the government's allegations.

## III BURDEN OF PROOF FOR DISPUTED ALLEGATIONS

### A. *Need for a Standard of Proof*

Underlying any district court's finding that the information it relies upon in imposing sentence is accurate, is the conclusion that the information satisfied some standard of proof. Although for years courts have imposed sentences on the basis of facts found without any prescribed burden of proof, *McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986), there are nevertheless good reasons why such a standard should be set. Without a definite and required burden of proof there can be no real assurance that the information relied upon is accurate. Nor can there be intelligible review of a claim on appeal that at sentencing procedural due process was denied. Further, a standard of proof will increase the fairness of the sentencing process and promote the development of rational sentencing criteria. Note, *A Hidden Issue of Sentencing: Burdens of Proof for Disputed Allegations in Presentence Reports*, 66 Geo.L.J. 1515, 1528 (1978). Most significant, having a definite standard will go far towards eliminating the risk of an erroneous deprivation of a defendant's liberty interest and thus satisfies his or her due process rights. *See Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

Appellant urges and the government concedes that the burden of persuasion must fall upon the government. Several reasons support the correctness of that proposition: first, there is a presumption that the defendant who denies committing these acts is innocent; second, the government has greater resources to marshall proof in support of these allegations; and third, the defendant should not have to face the inherent difficulty of proving a

negative—that is, that he did not commit the disputed acts. *See* 66 Geo.L.J. at 1537.

### B. *Preponderance of the Evidence Standard*

Having recognized the need for a standard, we still must identify one that satisfies the Fifth Amendment Due Process Clause while assuring the prompt administration of criminal justice, and which does not overly circumscribe the sentencing court's discretion. Appellant argues that due process concerns require the government to establish the facts in the pre-sentencing report either "beyond a reasonable doubt" or "by clear and convincing evidence."

■ We have already rejected the "reasonable doubt" standard in federal criminal sentencing proceedings, *United States v. Fatico*, 603 F.2d 1053, 1057 & n. 9 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), and the Supreme Court has held that the preponderance of the evidence standard satisfies the Due Process Clause of the Fourteenth Amendment in the context of state sentencing. *McMillan*, 106 S.Ct. at 2419–20. Because we see no principled reason to distinguish in this respect a state sentence from one imposed in federal court, we hold that a federal defendant's due process rights are also satisfied by the preponderance of the evidence standard. Having found due process satisfied, other policy concerns argue against adopting any higher standard of proof for disputed presentence report allegations than due process requires. These concerns include the long history of judicial discretion in sentencing, the strong interest in judicial economy, and the fact that already over-burdened trial courts would be greatly disserved by the time-consuming hearings that would be constantly called for under any higher standard. Therefore, we adopt the preponderance of the evidence standard for federal sentencing fact-finding.

### IV APPLICATION OF PREPONDERANCE STANDARD

We turn now to the facts in the record. The district court imposed Lee's 20-year sentence after his plea of guilty to count one based in part on its belief that Lee participated in racketeering Act 53. Hence, the proffer before that court must be analyzed in light of the preponderance standard.

Act 53 charged that Lee and two other named defendant Ghost Shadows, Peter Chin and Steven Yau, and others, acting on instructions from a gang leader kidnapped two young men, Man Sze Wei and Kam Piu Lui, in Manhattan, drove them to Brooklyn and there murdered them on January 15, 1980. The Assistant United States Attorney responded to the comments made by defense counsel on the government's proffer by placing in the record of the sentencing proceeding the government's proof of Lee's participation in this double murder. The AUSA spoke of her own knowledge. She stated that others present in the car and who were at the scene in Brooklyn with the victims on January 15, 1980 had named appellant Lee—two said he had been the driver of the car that night. The AUSA represented to the court that "every other detail we were able to unearth including statements made after the homicide by participants to other gang members corroborated the versions of events that we had been given by these two cooperating witnesses."

In addition, the AUSA stated that the government was prepared to call witnesses and put in this proof in detail. When the district court invited appellant's counsel to put the government to its proof, counsel declined and conceded that "I am assuming if we had a hearing that the government would produce witnesses who would give this version of this offense." By waiving his right to a hearing, appellant abandoned his opportunity to attack the government witnesses' credibility. Moreover, the district court was entitled to credit the government's version of Lee's participation in the double murder, even though the proffer was of uncorroborated accomplice testimony. *See Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 198,

**1058**

61 L.Ed. 442 (1917); *United States v. Bermudez,* 526 F.2d 89, 99 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976).

## V CONCLUSION

■ In sum, there was sufficient proof for the district court to find by a preponderance of the evidence that Lee participated in the double murder on January 15, 1980. Since the district court's finding by a preponderance of the evidence that the information in the government's proffer was reliable and accurate was not clearly erroneous, the imposition of the 20-year sentence on appellant upon his guilty plea to count one was not an abuse of its discretion.

Accordingly, the judgment appealed from is affirmed.

OAKES, Circuit Judge (concurring):

I concur in the result.

I do not think this opinion should go beyond holding that all that the due process clause requires is proof by a preponderance of the evidence. I think we may very well want to hold at some future time in some other context that proof by clear and convincing evidence is required as a matter of policy. *See, e.g.,* Note, *A Proposal to Ensure Accuracy in Presentence Investigation Reports,* 91 Yale L.J. 1225, 1245 nn. 115–17 (1982). As note 117 points out, this is the standard of proof required in analogous situations by the Supreme Court. *See Addington v. Texas,* 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979) (involuntary civil commitment hearing).