UNITED STATES of America,
Plaintiff–Appellee,

v.

Augustino FERNANDEZ–VIDANA,
Defendant–Appellant.

No. 87–3027.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1988.

Decided Sept. 21, 1988.

Stephen R. Sady, Office of Federal Public Defender, Portland, Or., for defendant-appellant.

Frank Noonan, Office of the U.S. Atty., Portland, Or., for plaintiff-appellee.

Before WALLACE and REINHARDT, Circuit Judges, and HARDY, District Judge.*

HARDY, District Judge:

Defendant Augustino Fernandez–Vidana pleaded guilty to one of two counts charging him with distribution of cocaine. He objected to a statement in the presentence report that he had participated in the distribution charged in the other count of the indictment. He appeals the district court's finding that he had participated in that distribution. We affirm.

BACKGROUND

The two-count indictment charged Vidana and his co-defendant, Jesus Ceja–Ochoa, with distributing cocaine on or about September 23 (the transaction actually oc-

---

* Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation.

curred on September 22) and on September 27, 1986.

Vidana pleaded guilty to the September 27 distribution. However, he objected to a statement in the presentence report that he also participated in the September 22 distribution. A hearing was held pursuant to *United States v. Petitto*, 767 F.2d 607 (9th Cir.1985). James Robert Miller, a police officer, testified as follows: On September 21 an informant reported that he had talked to Ochoa on September 18 about Ochoa's selling some cocaine to him and that they were to meet on September 22 to consummate the transaction. At that time the officer was not aware that Vidana was involved. On September 22 the informant reported that he had gone to Ochoa's apartment, that Vidana was also there, and that "they" had agreed to sell him a sample of cocaine. Vidana wanted to take the informant directly to the source of supply, but Ochoa did not want to do so. "They" then told the informant to go to a nearby parking lot and wait for them. After the informant left the apartment, surveillance officers observed Vidana and Ochoa leave Ochoa's apartment and go to another apartment at 4789 Mall Court, which both men entered and left. The two men then went to the parking lot where the informant was awaiting them. Both men got out of their vehicle, but Vidana went to a store while Ochoa went to the informant's car to deliver the cocaine. When Ochoa and Vidana drove away from the parking lot, police officers followed them back to the apartment at 4789 Mall Court.[1] On September 27, the informant reported that he and Vidana had driven to Mall Court, that Vidana went to a house at the end of the street, that he returned to show the informant a sample of cocaine, and that he told the informant that he wanted to sell a quarter of a pound of cocaine for $5,400. Officer Miller later gave the informant $5,400, and police officers followed the informant and Vidana to the Mall Court area where the informant gave Vidana the money. Vidana then went to 4789 Mall Court and a few minutes later returned and delivered a quarter pound of cocaine to the informant.

Vidana testified at the hearing and denied all involvement in the September 22 transaction. He stated that he was simply riding along with Ochoa and that he did not know that drug dealings were taking place. However, he admitted his participation in the September 27 transaction as well as another (uncharged) transaction on October 3.

The district judge found "that the Government's version of the events of the sale on September 22 is more probably accurate than that described by the defendant." Thereafter, in an order dated March 19, 1987, the judge stated that he found "by a preponderance of the evidence that the defendant actively participated in the September 22, 1986, sale."

Vidana argues that (1) that the trial judge relied on testimony by Officer Miller that was materially false, (2) acceptance of unreliable, uncorroborated hearsay violated due process and was an abuse of discretion, and (3) the use of a preponderance of the evidence standard in the sentencing hearing violated due process and was an abuse of discretion.

## I. Reliance on Police Officer's Testimony

Vidana contends that in finding that he had participated in the September 22 transaction, the district judge relied on materially false testimony—that Officer Miller's testimony at the sentencing hearing of what he had been told by his informant was not what the informant had testified at Ochoa's trial. The informant had testified as follows: On September 18 and 22 he discussed purchasing cocaine with Ochoa at Ochoa's apartment. Vidana was present on both occasions but did not say anything to him. Later on September 22 he was at a parking lot with Ochoa and Vidana, and Ochoa delivered cocaine to him. He did not mention that Vidana was not present at the time of the delivery.

---

**1.** Two inferences can reasonably be drawn from the evidence: that Vidana and Ochoa went to the Mall Court address to obtain cocaine from a supplier and that they returned to that address to pay the supplier.

■ The only inconsistencies between Officer Miller's testimony and the informant's are minor: Officer Miller testified the informant told him that "they" had agreed to sell a sample of cocaine and "they" had told the informant to wait for them at a parking lot, while the informant testified that the conversations were only between him and Ochoa. The officer's testimony that Vidana wanted to take the informant directly to the source of supply is not inconsistent with the informant's testimony. The informant testified that he and Vidana said nothing to each other, but he did not testify that Vidana said nothing to Ochoa.

## II. Reliance on Hearsay

■ Federal law is clear that a judge may consider hearsay information in sentencing a defendant. *See United States v. Wondrack*, 578 F.2d 808, 809 (9th Cir. 1978); *Gregg v. United States*, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969). The primary purpose of the sentencing report is to assist the judge in determining the appropriate sentence. The courts have determined that meaningful assistance requires that sentencing reports contain background and character information much more extensive than is normally heard during trial or during the taking of a plea. *Wondrack*, 578 F.2d at 809. The same policy applies to information brought out in sentencing hearings.

Only when the hearsay is so inadequately supported that "the factual basis for believing [it is] almost nil" can it be argued that the evidence should not have been considered. *Id.* (quoting *United States v. Weston*, 448 F.2d 626, 633 (9th Cir.1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). The officer's hearsay testimony does not meet this standard.

## III. Use of the Preponderance of the Evidence Standard

■ Vidana also argues that the district judge abused his discretion and violated Vidana's due process rights when he applied a preponderance of the evidence standard in making findings of fact. We disagree. In *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986), the Supreme Court rejected a due process challenge to a statute that prescribed a preponderance of the evidence standard for determining facts relating to sentencing, noting that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." While the Second Circuit has relied on *McMillan* in adopting a preponderance of the evidence standard for federal criminal sentencing proceedings, *United States v. Lee*, 818 F.2d 1052, 1056–57 (2d Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987), the Eleventh Circuit has declined to do so, concluding that once a presentence report is challenged as to factual inaccuracies, the government is required only to come forward with "some reliable proof by which the trial court can conclude that it is not unlikely that the government's statements are true." *United States v. Restrepo*, 832 F.2d 146, 148–49 (11th Cir.1987).

In *Petitto*, this court noted that due process requires that a court not rely upon "materially untrue information about a defendant's background," but did not suggest a preponderance standard for such facts, holding only that background information relied upon by the court must be supported by "some minimum factual basis." 767 F.2d at 611. Similarly, in *Jones v. United States*, 783 F.2d 1477, 1481 (9th Cir.1986), this court observed that while "[a] rational penal system must have some concern for the *probable accuracy* of the informational inputs in the sentencing process," (quoting *Weston*, 448 F.2d at 634) (emphasis added in *Jones*), the court would not interfere with "the trial judge's broad discretion to decide not only the relevance but the reliability of sentencing information." Whether a lesser standard of proof than the preponderance standard might be sufficient is not before us. We hold only that the district judge did not err in applying a preponderance of the evidence standard.

AFFIRMED.

**REINHARDT, Circuit Judge, concurring:**

I write separately only to add a word regarding the standard of proof to be applied in sentencing proceedings. While I believe that the preponderance of the evidence standard is appropriate for determining the facts in this instance, that is not necessarily the rule under all circumstances. For example, a higher standard may well be warranted in capital cases. As Judge Oakes said in a similar case when approving the use of the preponderance of the evidence test:

> I think we may very well want to hold at some future time in some other context that proof by clear and convincing evidence is required as a matter of policy.

*United States v. Lee,* 818 F.2d 1052, 1058 (2nd Cir.1987) (Oakes, J., concurring).