894 F.2d 403
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Veronica MARSHALL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin MORSE, Defendant-Appellant.
 Nos. 89-5411, 89-5413.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 30, 1989.
Decided: Jan. 11, 1990.
 
 Before K.K. HALL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 David H. Hopkins; Denise J. Tassi on brief, for appellants.
 Henry E. Hudson, United States Attorney, Debra S. Straus, Special Assistant United States Attorney, on brief, for appellee.
 PER CURIAM:
 
 
 1
 Veronica Marshall and Kevin Morse appeal their convictions of possession and attempted possession with intent to distribute marijuana, phencyclidine ("PCP"), and cocaine base ("crack") in violation of 21 U.S.C. Secs. 841, 846; and of introduction of marijuana, PCP, and crack into a penal institution in violation of 22 D.C.Code Ann. Sec. 2603. Finding no error, we affirm.
 
 
 2
 * On October 5, 1988, Marshall, accompanied by her two children, went to the Lorton Reformatory to visit Morse, the children's father, who is an inmate there. In a routine pat-down search, correctional officer Mabel Salyers detected a bulge in Marshall's jacket. Further inspection uncovered two balloons in the lining of the jacket which contained marijuana, PCP, and crack. The drugs were confiscated and Marshall was detained and interviewed for ten to fifteen minutes by Lt. Francis Alexander. Shortly thereafter, Morse approached Alexander, told him that the contents of the balloons were his (Morse's), and told him that Marshall did not know that the drugs were in the jacket.
 
 
 3
 On February 6, 1989, a grand jury returned a seven-count indictment against both appellants. In addition to the six substantive counts of which appellants now stand convicted, they were also indicted on a related conspiracy count. The district court, sua sponte, severed this count prior to trial.
 
 
 4
 During appellants' jury voir dire, they submitted six questions to the district court concerning panel members' views on the credibility of correctional officers' testimony. The court refused to give the questions as written but did ask the panel: "Are there any members of the jury panel who would give more credence to the testimony of a correctional officer or a police officer or a guard merely because he or she is in that capacity." Appellants did not object to the court's refusal to give their specific questions and the voir dire was concluded.
 
 
 5
 At trial, while sitting at the defense table, Marshall was identified as the woman carrying the drugs by Officer Salyers, Lt. Alexander, and another correctional officer, Jean Stewart. Prior to trial, Marshall had complained that this identification procedure would be unnecessarily suggestive and had requested the court to allow an in-court line-up identification. The request was denied.
 
 
 6
 At the conclusion of the trial, appellants were convicted on all counts and the conspiracy charge was subsequently dismissed. Marshall received six 30-month sentences to be served concurrently while Morse, a career offender, received two concurrent 210-month sentences on the attempted possession with intent to distribute PCP and crack counts. His other sentences were shorter and were also set to run concurrently.
 
 II
 
 7
 Both appellants contend that the trial court erred in refusing to give their proffered voir dire questions concerning correctional officer credibility. Marshall argues that her in-trial identification was so impermissibly suggestive that she was denied due process. Morse maintains that the evidence that he was a career offender was insufficiently reliable to justify his sentencing as such. None of those arguments gives us much pause.
 
 
 8
 Because appellants failed to object to their voir dire, we cannot reach their challenge unless a "miscarriage of justice" would result. United States v. Pennix, 313 F.2d 524, 527 (4th Cir.1963). Such is certainly not the case here. While the trial court did not ask appellants' proffered questions as scripted, the court did directly address the issue about which appellants were concerned--the credibility of the correctional officer witnesses. The conduct of voir dire is a matter left to the discretion of the trial court, Ristaino v. Ross, 424 U.S. 589, 594-95 (1976), and we find no abuse of that discretion here.
 
 III
 
 9
 In her challenge to the in-court identifications, Marshall concedes that she has no constitutional right to a line-up and that the disposition of her request for one rested in the discretion of the district court. United States v. Sebetich, 776 F.2d 412, 420-21 (3d Cir.1985); cert. denied, 484 U.S. 1017 (1988); United States v. Brown, 699 F.2d 585, 593 (2d Cir.1983). Nonetheless, she argues that the identifications were so unnecessarily suggestive that they cannot pass constitutional muster under the Biggers-Brathwaite line of authority. Neil v. Biggers, 409 U.S. 188 (1972); Manson v. Brathwaite, 432 U.S. 98 (1977). We disagree.
 
 
 10
 Due process requires the exclusion of identification testimony only if, in the totality of the circumstances, the unnecessarily suggestive identification procedure creates a very substantial likelihood of misidentification. Biggers, 409 U.S. at 198-199. The Supreme Court has made clear that if the identification evidence is reliable, it should be admitted even if it resulted from a suggestive procedure. Braithwaite, 432 U.S. at 114 ("reliability is the linchpin in determining the admissibility of identification testimony").
 
 
 11
 Applying these principles to the case at hand, any suggestiveness in the identifications of Marshall is overcome by their reliability. The testimony at trial showed that Marshall was a frequent visitor at Lorton. Consequently, Officers Stewart and Salyers had seen her numerous times before the day she was caught smuggling the drugs. Lt. Alexander interviewed Marshall for 10-15 minutes the day that she was apprehended, affording him an excellent opportunity to view her. Further, during the pat-down search, one of the children present shouted to an inmate "Daddy, Daddy ... Tiffany is here." Prison records reflect that Morse and Marshall have a daughter named Tiffany. On this record, we have no difficulty concluding that the trial court did not err in admitting the reliable identification testimony.
 
 IV
 
 12
 Lastly, Morse challenges the district court's determination that he was a "career offender" for sentencing purposes. Under Guideline 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Morse concedes requirements (1) and (2) and also concedes that he has one prior conviction that meets the criterion of requirement (3). He contests, however, the reliability of the government's evidence of a second such conviction.
 
 
 13
 Morse does not argue that there is not a second conviction. In 1982, he admits that he was convicted of assault with a deadly weapon in the District of Columbia. Rather, Morse argues that the government failed to carry its burden of proving that this conviction was based on conduct that meets the Guideline's definition of a crime of violence. We disagree.
 
 
 14
 In United States v. Urrego-Linares, 879 F.2d 1234, 1238 (4th Cir.), cert. denied --- U.S. ----, 110 S.Ct. 346 (1989), we held that the government bears the burden of proving a defendant's eligibility for an aggravating sentencing factor by the preponderance of the evidence. The Guidelines themselves make clear that, in meeting this burden, the government may submit evidence that would not be admissible in a criminal trial as long as that evidence is otherwise reliable. Sec. 6A1.3(a).
 
 
 15
 Here, the government submitted an unverified police report that showed that Morse's conviction arose from an incident where he and another man attacked a third person with a knife, beating and cutting that person severely. Morse presented no evidence to rebut the report, arguing only that the unverified report was insufficiently reliable to be considered. We cannot agree. Although this report would clearly not be admissible at trial, we find it reliable for sentencing purposes. To conclude otherwise would unnecessarily limit a sentencing court's ability to consider all forms of reliable information in setting a sentence. See United States v. Lee, 818 F.2d 1052, 1055 (2d Cir.), cert. denied, 484 U.S. 956 (1987). Furthermore, in view of the fact that Morse did not submit any evidence to contradict the report, we affirm the trial court's conclusion that the government had proven the violent nature of the assault by a preponderance of the evidence, thereby making Morse eligible for career offender status.
 
 V
 
 16
 In sum, we find that appellants' voir dire was adequate, that Marshall's in-court identifications were sufficiently reliable to be admitted into evidence at trial, and that Morse was properly treated as a career offender under the sentencing guidelines. Because the facts and legal contentions are adequately presented in the briefs and record, we dispense with oral argument. The judgment of the court below is affirmed.
 
 
 17
 AFFIRMED.