Anthony **PETERSON,** Petitioner,

v.

Eugene **LeFEVRE,**
**Superintendent,** Respondent.

No. 87 Civ. 7776 (JES).

United States District Court,
S.D. New York.

Jan. 4, 1991.

Traub & Traub, P.C., New York City (Doris G. Traub, of counsel), for petitioner.

Robert M. Morgenthau, Dist. Atty., New York County, New York City (Marc Frazier Scholl, Thomas E. Bohan, Asst. Dist. Attys., of counsel), for respondent.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Petitioner Anthony Peterson brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988), challenging his state court conviction on rape, sodomy, robbery and kidnapping charges. Petitioner makes three claims: (1) that he was deprived of the right to testify on his own behalf by the state court's rulings on the admissibility of evidence of similar crimes for impeachment purposes; (2) that he was denied due process because the sentencing court considered similar crimes for which the prosecution asserted that petitioner was responsible in fixing his sentence; and (3) that he was denied due process by the trial court's questioning of witnesses. The matter was referred to Magistrate Sharon E. Grubin, who recommended that the petition be denied. The Court has reviewed the Magistrate's Report and Recommendation ("Report") and the objections thereto *de novo, see* 28 U.S.C. § 636(b) (1988), and for the reasons set forth below the petition is dismissed.

## BACKGROUND

Petitioner was convicted, after a jury trial, of two counts of rape in the first degree, one count of sodomy in the first degree, two counts of robbery in the first degree and two counts of kidnapping in the second degree. He was sentenced on June 25, 1985 to consecutive terms of imprisonment of eight and one-third to twenty-five years on each rape count, the sodomy count and the robbery counts, and concurrent terms of eight and one-third years to twenty-five years on the kidnapping counts. The convictions were affirmed without opinion by the Appellate Division of the

New York State Supreme Court on December 2, 1986, *People v. Peterson*, 125 A.D.2d 1014, 508 N.Y.S.2d 360 (1st Dep't 1986), and leave to appeal was denied by the New York Court of Appeals on May 13, 1987. *People v. Peterson*, 69 N.Y.2d 1008, 511 N.E.2d 101, 517 N.Y.S.2d 1042 (1987).

The convictions arose from an attack upon a teenage couple in Central Park on July 14, 1984. The evidence introduced at trial established that Micki McPherson and Carlos Guzman, both fourteen-years-old, were attacked by petitioner and another man while waiting for some friends. *See* Report at 2–3. The couple were taken into a secluded wooded area at knifepoint, where the boy was tied and blindfolded with his own clothes, and robbed. The assailants then took the young girl to another part of the woods where both of them raped her and petitioner sodomized her. She was also robbed. *See* Report at 3–4. The youths eventually managed to escape when petitioner left to get some friends. *See* Report at 5. Petitioner was apprehended on July 18, 1984. Thereafter, he was indicted on July 30, 1984, tried and convicted.[1]

## DISCUSSION

### *The State Court's Evidentiary Ruling*

■ During petitioner's trial, the prosecution sought to introduce evidence of approximately a dozen similar crimes. These crimes were all attacks upon young couples in Central Park in 1983 and 1984 that occurred in the same vicinity as the incidents for which he was on trial. The prosecution also tried to introduce evidence of three 1978 rapes for which petitioner had been adjudicated a youthful offender.

The trial court barred the prosecution from introducing that evidence on its direct case, but ruled under *People v. Sandoval*, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974), that if petitioner chose to testify, the prosecution could impeach his credibility by questioning him about three of the similar acts.[2] *See* Trial Transcript ("Tr.") at 410–11, 414, 422–23.[3] Petitioner did not testify.

Petitioner's assertion that he was deprived of the right to testify on his own behalf arises out of this ruling. He argues that the Court misapplied *Sandoval* in that it improperly focused upon the similarities between the alleged similar acts and the McPherson incident and thus did not balance the probative value of that evidence against its potentially prejudicial effect.[4]

At the outset, the Court notes that there is a serious question as to whether the claim that the trial court misapplied *Sandoval* was sufficient to alert the state courts to the federal constitutional nature of the

---

1. Defendant was tried at the same time for an attack upon another young couple, Linda Navarro and Amato Martinez, which took place about four months prior to the McPherson incident. Petitioner had been separately indicted for that offense, but the two cases were consolidated for trial. Petitioner was acquitted of those charges.

2. In *Sandoval*, the New York Court of Appeals held that a trial court can make an advance ruling as to the use by the prosecutor of prior convictions or proof of the prior commission of specific criminal, vicious, or immoral acts for the purpose of impeaching a defendant's credibility if he testifies. *Id.* at 374, 314 N.E.2d at 416, 357 N.Y.S.2d at 853. The court also set forth guidelines for such a ruling, which require that the trial court balance the probative value of such evidence on the issue of the defendant's credibility against the risk that it may unfairly prejudice the defendant. *See id.* at 376–78, 314 N.E.2d at 417–18, 357 N.Y.S.2d at 855–56; *cf.* Fed.R.Evidence 608(b), 609(a).

3. The Trial Transcript and Sentencing Transcript pages are numbered at both the top-center and the top-right corner. The references herein are to the numbers at the top-right corner.

4. In this connection, the Court notes that the trial transcript makes it abundantly clear that the trial court focused on the "startling" parallels between the McPherson rape and the other incidents for the purpose of assessing whether the prosecution had a good faith basis to question petitioner about those acts. *See* Tr. at 411–14, 422–23. Moreover, the court recognized the prejudice inherent in impeaching a defendant by questioning him about almost identical crimes and carefully limited the scope of the examination to exclude mention of the common factors. *See* Tr. at 423–24. Furthermore, the Court also limited the prejudice to the defendant by permitting the prosecution to inquire about only three of the approximately twelve incidents. *See* Tr. at 422.

claim asserted. *See* 28 U.S.C. § 2254(b), (c) (1988). However, since it is clear that this claim must be dismissed on the merits because of petitioner's failure to testify at trial, the Court sees no need to resolve that issue. *See Granberry v. Greer,* 481 U.S. 129, 135, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987).

It is well-settled that a petitioner's failure to testify is fatal to any claims of constitutional deprivation arising out of a *Sandoval* type ruling because in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of that claim even when the issue is raised on direct appeal. *See Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984). It follows that where, as here, a similar claim is raised by a petition for a writ of habeas corpus, the same result must obtain. *See Carroll v. Hoke,* 695 F.Supp. 1435, 1439–40 (E.D.N.Y.1988), *aff'd mem.,* 880 F.2d 1318 (2d Cir.1989); *Underwood v. Kelly,* 692 F.Supp. 146, 151 (E.D.N.Y.1988), *aff'd mem.* 875 F.2d 857 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Carrasquillo v. Kirk,* 677 F.Supp. 193, 194–95 (S.D.N.Y. 1988).

*The Sentencing Claim*

Petitioner's second claim stems from the state court's comments at sentencing which indicate that the court imposed the maximum possible sentence upon petitioner because, in the court's view, he was responsible for the series of identical assaults referred to above, for which petitioner had not been tried or convicted.[5] *See* Transcript of Sentencing ("Sent.Tr.") at 17–20. Additionally, he contends that because the Court failed to hold a hearing on the issue of whether petitioner actually committed those crimes it had no factual basis to believe that he did. These claims lack merit.[6]

▪▪▪ It is clear that a sentencing court can consider a wide range of information in fixing an appropriate sentence for a criminal defendant. *See, e.g., United States v. Grayson,* 438 U.S. 41, 49–50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 250–51 & n. 15, 69 S.Ct. 1079, 1084–85 & n. 15, 93 L.Ed. 1337 (1949); *United States v. Lee,* 818 F.2d 1052, 1055 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987); *United States v. Pugliese,* 805 F.2d 1117, 1122 (2d Cir.1986). Among the information which a court may properly consider is other criminal conduct that may fairly be attributed to the defendant, including matters for which he has not been charged or convicted, so long as there is a factual basis for reliance upon such matters. *See Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987); *Lee, supra,* 818 F.2d at 1055; *Vargas v. Hoke,* 664 F.Supp. 808, 812 (S.D.N.Y.1987).

▪▪▪ In this case, there was clearly a sufficient factual basis for the state court to believe that petitioner was in fact guilty of the additional rapes that it considered in fixing his sentence.[7] The prosecution rep-

---

5. The sentencing court also considered the heinous nature of the crime for which he was convicted, raping a fourteen-year-old girl, the concomitant harm that that caused to the victim, and petitioner's lack of remorse. *See* Sent.Tr. at 19, 20–21.

6. The Magistrate concluded that petitioner had failed to exhaust this claim also. However, as with the *Sandoval* claim, this claim may properly be rejected on the merits without addressing the exhaustion issue.

7. Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all. *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986). However, in *United States v. Lee, supra,* the Second Circuit held that where a sentencing court considers additional matters in sentencing, due process requires that the government bear the burden of proving those acts by a preponderance of the evidence. *See* 818 F.2d at 1056–57. Although that holding was based in part upon federal constitutional grounds, one district court has concluded that it should not be retroactively applied to a state habeas petitioner's challenge to his sentence because to do so would "throw open innumerable state court sentences, long after it ceased to be possible to ascertain whether the sentencing judge had relied on those allegations or how those allegations were supported." *Vargas v. Hoke, supra,* 664 F.Supp. at 813. This Court

resented at sentencing, and during the trial, that it possessed sufficient information to connect petitioner to a series of rapes that were committed in the same part of Central Park. *See* Tr. at 250–51; Sent.Tr. at 6–12. These cases involved a virtually identical *modus operandi, i.e.,* a teenage couple was attacked, they were taken to a wooded area, the boy was tied up with his own clothes, the girl was raped and sodomized, they were both robbed; all of the incidents occurred in the same area in Central Park; and the description of the perpetrator in several of those incidents matched that of petitioner. *See* Tr. at 250–51; 411–14; Sent.Tr. 6–12. Indeed, in at least one case, the victim, who subsequently refused to cooperate in the prosecution, identified a photograph of petitioner as her attacker. *See* Tr. at 412; Sent.Tr. at 10–11. Moreover, petitioner had pled guilty as a youthful offender to rape and sexual abuse for three assaults that took place in the same section of Central Park in 1978.[8] *See* Sent.Tr. at 8–9.

 The court rejects petitioner's argument that he was denied due process by the state court's failure to hold a hearing before it considered these matters in imposing sentence. There is no constitutional right to an evidentiary hearing to challenge disputed factual matters at sentencing. *See Romano, supra,* 825 F.2d at 728–29. Since the Constitution permits the sentencing court broad discretion in assessing a defendant's challenge to pre-sentence information, the court may resolve such disputes on the basis of written submissions, arguments at sentencing, or an evidentiary hearing as it sees fit. *See id.*

Moreover, although throughout the trial and at the sentencing hearing, the prosecution set forth in detail the facts it had that connected petitioner to these crimes, other than making a general claim that he was innocent of those crimes, petitioner did not request a hearing to contest those issues. *See* Sent.Tr. at 14–16. Given that circumstance, his assertion that his constitutional rights were violated by the court's reliance on those matters at sentence borders on the frivolous.[9] *See Lee, supra,* 818 F.2d at 1057; *Pardo v. Leonard,* 1989 WL 38325, 1989 U.S.Dist. LEXIS 4336 (E.D.N.Y. April 6, 1989) (88 CV 2072).

*The Trial Court's Questioning of Witnesses*

The Court has reviewed the entire trial transcript and agrees fully with the Magistrate's conclusion that the trial judge's actions were not in any way improper, did not prejudice petitioner, and certainly did not deprive him of a fundamentally fair trial.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is dismissed and the Clerk of the Court is directed to close the above-captioned action.

---

agrees with Judge Leval's reasoning in *Vargas* that *Lee* should be read as a prospective direction to federal district judges only, not an invitation to revisit long-since concluded state court proceedings. In any event, the facts of this case would be sufficient to meet a preponderance standard even were that standard applicable to collateral review of state sentencing proceedings.

**8.** Furthermore, there is no question that the court could properly consider evidence introduced at trial relating to the Navarro–Martinez incident, which also followed the same pattern as the McPherson assault, in determining peti-

tioner's sentence and was not precluded from doing so merely because petitioner was acquitted of those charges. *See United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Golomb,* 811 F.2d 787, 791 (2d Cir.1987); *United States v. Sweig,* 454 F.2d 181, 184 (2d Cir.1972).

**9.** The Court also notes that petitioner refused to be interviewed by the probation department and therefore rejected that opportunity to challenge the prosecution's argument that he was responsible for the series of rapes as well. *See* Sent.Tr. at 14.