Andrew J. Maloney, U.S. Atty. by Brian Moriarty, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Federal Defender Services Unit, The Legal Aid Society by Elizabeth Felber, Brooklyn, N.Y., for defendant.

### MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Defendant Armando Londono pled guilty to importing cocaine in violation of 21 U.S.C. § 960(a)(1). He had been arrested when he disembarked at John F. Kennedy Airport. There it was discovered that he had swallowed balloons containing cocaine prior to boarding the plane in Colombia. The number of balloons and the weight of the cocaine is controverted.

Customs officers reported to the government that, while in detention at airport medical facilities, Mr. Londono "passed" 63 balloons. Subsequent laboratory tests found the balloons contained 555.8 grams of a powder composed mostly of cocaine. Given this evidence, and taking into account that this was defendant's first offense, that he acted only as a courier and

**UNITED STATES of America**

v.

**Armando LONDONO, Defendant.**

**No. 91 CR 724.**

United States District Court,
E.D. New York.

Feb. 4, 1992.

that he accepted responsibility, the relevant sentencing guidelines call for a term of imprisonment of 33 to 41 months. *See* United States Sentencing Commission, *Guidelines Manual,* §§ 2D1.1(a)(3), 3B1.2(a), 3E1.1(a) (Nov.1991).

From the time of his arraignment, Mr. Londono has contested the accuracy of the customs officers' balloon count. At a January 24 *Fatico* hearing, he reiterated this claim. Mr. Londono testified that, although he had been asked to transport seventy balloons containing ten grams of cocaine each, he was quite certain that he only managed to swallow forty-eight. Defendant was asked to explain the discrepancy between his recollection and the number of balloons observed by customs officers. He testified that the conditions in which the count took place were not conducive to accurate enumeration. Apparently customs officials were, with the use of a single commode, simultaneously counting balloons from seven detainees. According to Mr. Londono, he and the other detainees were under intense internal pressure to evacuate. As a result, customs officers could not remove one detainee's balloons from the commode before the next person began to use it. Mr. Londono thus claims that others' balloons were attributed to him.

At sentencing, the weight of smuggled drugs must be established by a preponderance of the evidence. *United States v. Lee,* 818 F.2d 1052, 1057 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). Mr. Londono was entirely credible. The government, which knew of Mr. Londono's position at least from the time of a December 10 letter from defendant's counsel, has not contradicted him. The evidence establishes that the defendant swallowed forty-eight balloons containing a total of 480 grams of cocaine. Because this reduces the amount of cocaine imported by defendant to under 500 grams, a reduction of two guideline points is required. The relevant guideline range is therefore 27–33 months.

The facts of this case suggest that the system for processing those accused of smuggling drugs in their bodies has become somewhat disorganized as a result of the large number of drug cases being prosecuted and the wretched situation customs officers face. Another indication is the frequent delays in drug analyses prepared by laboratories for the government that result in pleas and sentences being adjourned for months and plea agreements being made without exact knowledge of the amount of drugs at issue. In view of the serious consequences of even small errors in weighing and attributing drugs, prosecutors, defense counsel and probation officers must insist on absolute accuracy in authenticating, weighing and testing drugs used in criminal prosecutions. In this case, a finding that defendant imported 555 rather than 480 grams of cocaine (about two and one-half ounces difference) would have resulted in an additional term of imprisonment of up to 14 months.

There are many cases in this district in which the defendant carries just a few grams above a guidelines cutoff point, exposing the accused to significant additional time in prison. This suggests that the fine and arbitrary distinctions between drug weights in section 2D1.1(c) of the guidelines are of questionable value in deterring drug importation. The large increments of punishment that come with small changes in drug weight do not seem to further deter leaders of drug rings, to whom their couriers' lives are without significance. The couriers themselves are usually ignorant of the specifics of our drug laws and are almost undeterrable because of economic and other pressures.

Based on the evidence before the court, the defendant is sentenced to 27 months imprisonment, five years supervised release and a fifty dollar assessment. The minimum guideline sentence is appropriate since all the evidence suggests this crime was a deviation from normal conduct and will not be repeated.

So ordered.