963 F.2d 381
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime Gurrola MADRID, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cesar CAZAREZ-PAYAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejos Juan AVALOS, Defendant-Appellant.
 Nos. 91-30082, 91-30116 and 91-30153.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 8, 1992.*
Decided May 12, 1992.
 
 Before WALLACE, Chief Judge, and GOODWIN and SKOPIL, Circuit Judges.
 
 MEMORANDUM
 
 1
 Madrid, Cazarez-Payan, and Avalos pleaded guilty to conspiracy to possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2. Cazarez-Payan also pleaded guilty to possession with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(b)(1). They appeal their sentences imposed under the Sentencing Guidelines (Guidelines). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We affirm the sentences.
 
 
 2
 * Madrid and Avalos argue that the district court erred in applying a two point enhancement to their offense levels on the basis that they had knowledge of, and therefore are to be held accountable for, 20 kilograms of cocaine. Twenty kilograms represents the total amount of cocaine, and cash converted to cocaine, seized from all members of the conspiracy in controlled buys and during the execution of search warrants on their residences.
 
 
 3
 To determine the offense level in a drug conspiracy case, a court should consider relevant conduct pursuant to Guidelines section 1B1.3(a)(1), which includes:
 
 
 4
 all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.
 
 
 5
 Conduct "for which the defendant would be otherwise accountable also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Id., comment. (n. 1). We review for clear error the district court's finding that conduct in furtherance of a conspiracy was reasonably foreseeable to a defendant. United States v. Garcia, 909 F.2d 1346, 1349 (9th Cir.1990) (Garcia ).
 
 
 6
 Madrid and Avalos argue that the district court clearly erred in attributing to them knowledge of cocaine that they were not seen with or that they did not themselves sell. The government points to evidence supporting the district court's finding that it was reasonably foreseeable to Madrid and Avalos that the organization was dealing in large quantities of drugs. The 20 kilogram quantity reflected only the drugs and cash equivalent actually seized in this case, even though members of the organization were seen with large quantities of drugs and money throughout the course of the conspiracy. In addition, these defendants had close ties with other members of the conspiracy: they lived near each other or in houses owned by one another, they made hundreds of phone calls between themselves, and they were heard planning trips out of the country to obtain drugs.
 
 
 7
 In United States v. Willis, 899 F.2d 873 (9th Cir.1990) (Wiliis ), we considered the closeness of the ties between the co-conspirators in determining whether use of a weapon by a co-conspirator was foreseeable. We reasoned that "where as here, co-conspirators are few in number and know each other well, the court may infer that each participant knew the others' methods of operation." Id. at 875. In this case, some of the co-conspirators were related and most were closely associated. Therefore, we conclude that the district court's finding that Madrid and Avalos should be held accountable for the entire amount of drugs and money seized from all members of the conspiracy was not clearly erroneous.
 
 
 8
 Avalos also argues that he conspired solely with Madrid and that he should not be held responsible for drugs sold by other members of the conspiracy. He cites United States v. North, 900 F.2d 131 (8th Cir.1990), for the proposition that he should not be held responsible for drugs sold by his supplier to others. In North, the Eighth Circuit determined that there was insufficient evidence linking North to other people with whom his supplier conspired. Id. at 133. This case differs from North, however, in that Avalos had substantial contact with Cazarez-Payan, as well as other key members of the conspiracy. There was evidence presented to the district court that Avalos was present when Cazarez-Payan possessed and distributed large quantities of drugs. In addition, the government presented evidence that Avalos knew both the source of the drugs he sold, and when certain drug shipments were due to arrive. We conclude that the district court did not clearly err in finding that Avalos had knowledge of the overall conspiracy and could reasonably foresee that at least 20 kilograms of drugs were involved.
 
 II
 
 9
 Madrid, Cazarez-Payan, and Avalos argue that the district court erred in enhancing their base offense levels by two points for possession of a firearm. Guideline section 2D1.1(b)(1) provides for a two point increase in the base offense level "if a dangerous weapon (including a firearm) was possessed during commission of the offense." The commentary to section 2D1.1(b)(1) provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id., comment. (n. 3).
 
 
 10
 Weapons were seized from these defendants' residences. They each, therefore, possessed at least one weapon during the period of time in which they were involved in drug trading. In determining whether a firearm enhancement applies, the entire course of conduct, not just the offense of conviction, is properly considered. United States v. Willard, 919 F.2d 606, 609-10 (9th Cir.1990), cert. denied, 112 S.Ct. 208 (1991). The district court need not rely on specific evidence that the defendants possessed guns at the point of sale of the drugs to apply the firearm enhancement. Id. at 609. The government has shown that these defendants were heavily involved with drug trafficking and that numerous weapons were found in their residences. Therefore, the district court did not clearly err in finding that it was not clearly improbable that these weapons were connected with the drug offenses.
 
 
 11
 In addition, the district court's decision to enhance defendants' sentences is supportable on the basis that it was reasonably foreseeable that the co-conspirators possessed firearms. Willis, 899 F.2d at 875 (wife's sentence enhanced on basis of husband's possession of a gun); Garcia, 909 F.2d at 1349 (reasonably foreseeable that co-conspirator possessed gun during commission of offense). In this case, the large quantity of drugs and the extensive contact between the conspirators indicates that it was reasonably foreseeable to the defendants that their co-conspirator's would, and in fact did, possess numerous firearms. The district court finding was not clearly erroneous.
 
 III
 
 12
 Madrid and Cazarez-Payan argue that the district court erred in enhancing their base offense levels for being a leader or manager in the conspiracy. The question of a defendant's role in a conspiracy is a question of fact, which we review for clear error. United States v. Sanchez, 908 F.2d 1443, 1447 (9th Cir.1990).
 
 
 13
 Guideline section 3B1.1(a) provides for a four level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Section 3B1.1(c) provides for a two level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." Factors to be considered "include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Id., comment. (n. 3).
 
 
 14
 The government presented evidence that Madrid was in a position of authority over Avalos with respect to certain sales of drugs to an undercover officer. Madrid received a two level enhancement pursuant to section 3B1.1(c). He argues that the evidence is insufficient to support the government's contention that he was a leader or manager in the overall offense. From the evidence presented, it was reasonable for the district court to infer that Madrid exercised control over Avalos throughout the conspiracy. There was evidence that Avalos, on several occasions, sought approval from Madrid before making certain drug transactions. This evidence supports the district court's finding that Madrid played a leadership role throughout the offense, and not merely during isolated drug transactions.
 
 
 15
 Cazarez-Payan received a four level enhancement pursuant to section 3B1.1(a). He argues that although there is evidence that he was involved with larger quantities of drugs, there is no evidence that he was a leader or manager. He contends that all participants acted independently for their own purposes while maintaining common places and sources of distribution.
 
 
 16
 The district court heard evidence that Cazarez-Payan procured large quantities of drugs, distributed drugs to other members of the conspiracy, received proceeds from their drug sales, and exercised control over co-conspirators' drug trafficking activities. There was evidence that he supplied drugs to Madrid, who in turn acted as a supplier to Avalos. In a similar situation, we upheld the application of a four level enhancement for a leadership role. See United States v. Smith, 924 F.2d 889, 895-96 (9th Cir.1991). We conclude that the finding of the district court was not clearly erroneous.
 
 IV
 
 17
 Cazarez-Payan argues that the sentencing court, in violation of due process, heard hearsay testimony in support of a two level enhancement for obstruction of justice. Guideline section 3C1.1 provides that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Section 3C1.1 applies to such action as "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id. comment. (n. 3). We review the district court's finding of fact for clear error. United States v. Avila, 905 F.2d 295, 297 (9th Cir.1990).
 
 
 18
 Cazarez-Payan objects to the hearsay testimony of Plancarte, who testified that his wife received a telephone call from Cazarez-Payan the day after he was arrested, threatening to "get even." Plancarte also testified that some time later, Cazarez-Payan's co-defendant girlfriend, chased him in an automobile at high speeds. Cazarez-Payan argues that admission of the hearsay testimony regarding the alleged threats violates due process because he was denied his right to confront and cross-examine Mrs. Plancarte.
 
 
 19
 The Guidelines provide that "[r]eliable hearsay testimony evidence may be considered." U.S.S.G. § 6A1.3(a), p.s. (comment). We have held that a district judge may consider hearsay evidence when sentencing a defendant. United States v. Fernandez-Vidana, 857 F.2d 673, 675 (9th Cir.1988). "Only when the hearsay is so inadequately supported that the factual basis for believing [it is] almost nil can it be argued that the evidence should not have been considered." Id. (internal quotations and citation omitted).
 
 
 20
 Plancarte is a police informant and an important eyewitness in this case. He was present when his wife received the telephone threat to which he testified, and he heard her side of the conversation. In addition, he gave a first hand account of his high speed encounter with Cazarez-Payan's girlfriend. The hearsay testimony relating the phone conversation between his wife and Cazarez-Payan is not without some reliable factual basis. We therefore conclude that the district court did not err in imposing the enhancement.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4