**UNITED STATES of America**

v.

**John W. McDOWELL, Jr., Appellant.**

**Nos. 89-3265, 89-3266.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) October 3, 1989.

Decided Oct. 25, 1989.

---

E. Thomas Maxwell, Jr., Baltimore, Md., for appellant.

William C. Carpenter, Jr., U.S. Atty., Richard G. Andrews, First Asst. U.S. Atty., Wilmington, Del., for appellee.

Before SLOVITER, GREENBERG, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal of the sentence meted out to the appellant, John W. McDowell, Jr., presents a question of first impression for this court. We must initially determine the burden of proof with respect to facts relevant in the calculation of a sentence under the new Sentencing Guidelines. Then we must determine this court's scope of review with regard to those determinations of fact.

McDowell pled guilty to a count of knowingly making a false statement material to the lawfulness of the sale of a firearm in violation of 18 U.S.C. § 922(a)(6), a count of knowingly possessing a firearm in and affecting commerce in violation of 18 U.S.C. § 922(g)(1), and a count of operating an illegal gambling operation in violation of 18 U.S.C. § 1955. The district court adjusted his offense level upwards for having obstructed justice by suborning the testimony of his son, and declined to adjust the offense level downwards for acceptance of responsibility for the commission of the offenses. As a result of these calculations, the court sentenced the appellant to a twenty-four month term of imprisonment.

On appeal, McDowell challenges this sentence on three grounds. He first claims that the court abused its discretion in allowing the disclosure of his son's grand jury testimony which it is alleged that he suborned. Next, he challenges the court's determination that he suborned his son's testimony. Finally, he contends that he should have been granted the reduction for acceptance of responsibility on all but one of the counts. We affirm the sentence imposed.

## I.

### A. Imposition of the Sentence

The Government charged John W. McDowell, Jr., in two separate indictments:

Criminal Action No. 88–26 charged him with three counts of weapons violations under 18 U.S.C. § 922(a)(6) and two counts under 18 U.S.C. § 922(g)(1), and Criminal Action No. 88–28 charged him and others with one count of maintaining a gambling business in violation of 18 U.S.C. § 1955 and one count of conspiracy to conduct an illegal gambling business in violation of 18 U.S.C. § 371. In a pretrial conference pursuant to the first indictment, as part of a plea bargain agreement, McDowell changed his not guilty plea on two of the weapons violations counts to guilty. The court accepted the plea agreement and scheduled a sentencing hearing. Prior to this hearing, the Government filed a motion to disclose grand jury information with respect to the grand jury testimony of McDowell's son, John W. McDowell, III. The court granted this motion.

Before his sentencing, McDowell withdrew his guilty plea and a trial was scheduled. On the day of trial, McDowell again requested, and was granted, permission to change his plea on two counts of the first indictment and one count of the second indictment to guilty. The court again scheduled a sentencing hearing.

Prior to the sentencing hearing, Senior U.S. Probation Officer Eugene Mayhew compiled a presentence investigation report. Mayhew's report concluded that based upon

> the apparent contradiction between the statement of Mr. McDowell's son to the investigating agents and his testimony before the grand jury, as well as the statement of the owner of Steele's Gun Shop ... Mr. McDowell's offense level should be increased two levels. More specifically, he appears to have suborned untruthful testimony by his son before the grand jury.

Mayhew also asserted that McDowell's offense level should not be adjusted downward for acceptance of responsibility because he had suborned testimony. *See* Sentencing Guidelines § 3E1.1(c) application note 4. McDowell objected to this

report and requested and was granted an evidentiary hearing. At the hearing the court found that McDowell had suborned his son's testimony.

At the sentencing hearing Judge Roth determined the base offense level for the weapons charges to be nine for each offense. *See* Sentencing Guidelines § 2K2.1. She then upwardly adjusted the level for the count of knowingly possessing a firearm in and affecting commerce by two, to eleven, for McDowell's having suborned testimony. *See* Sentencing Guidelines § 3C1.1 application note 1(c). She determined the base level offense for the gambling violation to be twelve and made no adjustments. *See* Sentencing Guidelines § 2E3.1. The offenses were then combined, pursuant to Guidelines § 3D1.4, to arrive at an offense level of fifteen. The judge then declined to adjust this to reflect any acceptance of responsibility. Based upon this offense level, the judge sentenced McDowell to a twenty-four month prison term.

### B. Young McDowell's Testimony

On April 26, 1988, the appellant's son, John McDowell, III, testified before the Grand Jury in the District of Delaware. He testified that he owned and purchased the AR–15 firearm which the Delaware State Police seized in the December 20, 1987, search of his father's home. He explained that he had brought the gun to Delaware on December 19, 1987, from Florida, where he was a student. If this testimony were accurate, it would have completely exculpated his father for the charges relating to the AR–15.

The grand jury testimony directly conflicted with answers the younger McDowell had given to Treasury Department agents just four days prior. On April 22, 1988, McDowell was questioned at his mother's home and in his mother's presence by Bureau of Alcohol, Tobacco, and Firearms Special Agent Swartswelder and Internal Revenue Commission Special Agent Amato. He told the special agents that he had never owned nor had ever purchased a firearm. He also told them that he had

only been in Delaware once in 1987, at Eastertime, and that he had not seen his father since either 1984 or 1985. The interview ended when Swartswelder showed McDowell a copy of a firearm transaction dated April 23, 1987, for an AK–47 rifle which bore the signature of John W. McDowell, III. McDowell responded, "This is pretty good," and refused to answer any more questions. Special Agent Amato then served him with a grand jury subpoena.

The accuracy of the version of the facts which the younger McDowell reported to the special agents is independently supported by the testimony of Charles Steele, owner of Steele's Gun Shop. Steele positively identified the AR–15 rifle seized as the gun which McDowell had brought to him for repairs in October 1987. Assuming this to be true, then McDowell had the gun prior to December 19, 1987, when his son claims first to have brought the gun from Florida.

The appellant, although admitting that his son's grand jury testimony was perjured, vehemently denies that he did anything to induce the perjury. He did, however, make three phone calls to his son during the time that the special agents were interviewing him. The senior McDowell alleges that he first called to welcome his son home. He next called to pass on advice from counsel that his son should not speak with the special agents unless subpoenaed to do so. The final call, he claims, he made not to his son at all, but to agent Amato to tell him to leave his son alone. Furthermore, appellant accompanied his son, along with McDowell III's mother (the appellant's ex-wife) and attorney, to the Grand Jury.

### II.

Appellant's first assertion is that his son's grand jury testimony never should have been admitted into evidence, because to do so unjustifiably breached the secrecy of the grand jury proceedings. Necessarily, excluding the grand jury testimony would result in a recalculation of McDowell's sentence because without the grand

jury testimony it would be impossible to prove the perjury in his son's testimony.

■ As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity. *United States v. Proctor & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1957). As Federal Rule of Criminal Procedure 6(e) notes:

> A grand juror, an interpreter, a stenographer of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.

Although government attorneys are entitled to disclosure of grand jury proceedings, except for deliberation and the votes of the jurors, because of their presence in the grand jury room during the presentation of evidence, Fed.R.Crim.P. 6(e) advisory committee's note, more extensive disclosure is also permitted "when so directed by a court preliminary to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i).

■ To support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy. *United States v. Proctor & Gamble Co., supra* at 683, 78 S.Ct. at 986. Once such a need is shown, the district court "must weigh the competing interests and order so much disclosure as needed for the ends of justice." *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 62 (3d Cir.1982). In balancing the competing interests, the district court "necessarily is infused with substantial discretion." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). This court must analyze a district court's decision to disclose grand jury information only to determine if there was an abuse of that discretion. 682 F.2d at 65.

■ In this case, the Government was able to show a particularized need for the information; it believed it would prove that McDowell III had committed perjury and aid in proving that his father had suborned the testimony, thus affecting the proper sentence under the Sentencing Guidelines. The motion to disclose specifically stated:

> It is relevant to determination of the Sentencing Guidelines in this case whether John McDowell, Jr., attempted to impede the administration of justice during the investigation, SG § 3C1.1, and whether McDowell has accepted responsibility for his actions, SG § 3E1.1. The United States is in possession of testimony of John McDowell III before the federal grand jury on April 26, 1988, which in the opinion of the undersigned should be disclosed to the Defendant and to the Probation Department for proper calculation of the appropriate Sentencing Guidelines.

McDowell's argument that this is no more than the "opinion" of the Government is specious. The Government can offer no more than its opinion; it is ultimately up to the judge to determine whether the information should be disclosed. Besides, the "opinion" expressed concerns the propriety of disclosure, not the existence of a particularized need. Clearly, the Government has demonstrated that the grand jury testimony would be relevant for its inquiry into the younger McDowell's perjury and his father's role therein.

The district court did not abuse its discretion in ordering the disclosure. The interests in secrecy were very low; the grand jury testimony ultimately could have been introduced by the Government at the hearing itself. On the other hand, there were strong reasons for disclosing the testimony. First, it enhanced judicial efficiency to allow the presentence investigator to examine the testimony prior to preparing his report. Second, it prevented the defendant from being surprised at the hearing by the introduction of the testimony. In this way, McDowell was able to thoroughly prepare a defense to the charge. Finally, the goals of the Sentencing Guidelines are best served by disclosure, because disclosure allows the trial judge, and before him the presentence investigator, to fully consider

all of the factors which the Guidelines have determined to be relevant. Thus, the trial judge committed no error in directing the disclosure of the grand jury testimony.

### III.

McDowell next contends that the trial judge erroneously concluded that McDowell had suborned his son's testimony. In responding to McDowell's assertions we must consider two questions: what is the relevant burden of proof in a sentencing hearing under the new Sentencing Guidelines, and what is the scope of this court's appellate review of factual determinations made in calculating the proper sentence under the Guidelines?

Prior to the promulgation of the Sentencing Guidelines, it was unnecessary to prescribe a burden of proof for the determination of facts relied upon in sentencing. *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986). Judges had a great deal of latitude in imposing a sentence, and thus it was rare for any one factual determination to have a significant enough impact to warrant an appeal. Sentences had to be only within the statutory limitations to survive review. In fact, a trial judge was not even constitutionally required to enunciate his reasons for imposing a sentence. *United States v. Inmon*, 594 F.2d 352, 354 (3d Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979). The Guidelines, though, in an attempt to reduce disparities and improve fairness in sentencing, have imposed a scheme by which a single factual determination could significantly affect the prescribed sentence. *See* Sentencing Guidelines §§ 3A1.1–3E1.1. As the Sentencing Commission notes in its commentary, "The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment." Sentencing Guidelines § 6A1.3 commentary.

This compels us to determine what level of proof is necessary to support a finding of fact which leads to an adjustment (either upwards or downwards) in the offense level as well as what is this court's scope of review of these findings. These determinations will also assist the sentencing and appellate courts to further analyze the sentencing process.

### A. Burden of Proof

Decisions made in sentencing do not as deeply implicate a defendant's rights as do decisions made regarding guilt or innocence. Once criminal proceedings reach the sentencing stage, the decision has already been made that the defendant can be deprived of his liberty. As the Supreme Court notes, once the reasonable doubt standard has been applied and the defendant has been convicted, "the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him." *McMillan*, 477 U.S. at 92 n. 8, 106 S.Ct. at 2419 n. 9 (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). The maximum length of the deprivation of liberty has also been determined legislatively. Thus, all that is left to determine at sentencing is where in the permissible zone the defendant's sentence will fall. Although this decision can be, and most often is critical, it is rarely ever as crucial as the initial decision finding guilt.

Due process does guarantee a convicted criminal defendant the right not to have his sentence based upon "materially false" information. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Cifuentes*, 863 F.2d 1149, 1153 (3d Cir.1988). To this extent, the federal rules require the court to hold a hearing to determine disputed issues of fact included in the presentence report if it wishes to rely upon these facts in sentencing. Fed.R.Crim.P. 32(c)(3)(D).[1] The purpose of this hearing,

---

1. A conclusion in the presentence investigation report which goes unchallenged by the defendant is, of course, a proper basis for sentence determination. In this respect, the report serves as a prima facie and sufficient showing of fact.

The party challenging the report then has the burden of production, under Rule 32(c), to come forward with evidence that tends to indicate that the report is incorrect or incomplete. The question we are addressing is who has the

though, is to ensure merely that the information relied upon is not materially false. Determining that information is not materially false does not require any type of heightened scrutiny. It is enough that the sentencing judge is convinced that the disputed fact, as alleged, is true. The long history of judicial sentencing and strong policy reasons, including judicial economy, persuade us, as they have the courts of appeals in the second, fourth, and eleventh circuits, that a defendant's rights in sentencing are met by a preponderance of evidence standard. We therefore hold that a sentencing court considering an adjustment of the offense level, *see* Sentencing Guidelines Ch. 3, need only base its determination on the preponderance of the evidence with which it is presented. *See United States v. Lee,* 818 F.2d 1052, 1056 (2d Cir.1987); *United States v. Urrego–Linares,* 879 F.2d 1234, 1237–38 (4th Cir. 1989); *cf., United States v. Restrepo,* 832 F.2d 146, 150 (11th Cir.1987) ("a PSI statement may be accepted as true even in situations where the sentencing judge might find that there is a balance of probabilities."). We explicitly do not address the burden of proof in cases where a sentencing adjustment constitutes more than a simple enhancement but a new and separate offense.

That the preponderance of evidence standard can withstand constitutional muster is without much doubt. In *McMillan,* the Supreme Court upheld a Pennsylvania statute which provided that visible possession of a firearm during the commission of a criminal offense would result in an increased sentence and that possession need only be proved by the preponderance of the evidence. The court, noting that sentencing decisions had rarely been subject to any burden of proof, concluded that application of the clear and convincing standard of proof "would significantly alter criminal sentencing. . . ." 477 U.S. at 91–92 & n. 8, 106 S.Ct. at 2418–19 & n. 8. Although *McMillan* was decided under the fourteenth amendment due process clause and this case involves the fifth amendment due

process clause, there appears to be "no principled reason to distinguish in this respect a state sentence from one imposed in federal court." *Lee,* 818 F.2d at 1057.

■ It therefore logically follows that the burden of ultimate persuasion should rest upon the party attempting to adjust the sentence. Thus, when the Government attempts to upwardly adjust the sentence, it must bear the burden of persuasion. This prevents the criminal defendant from having to "prove the negative" in order to avoid a stiffer sentence. *See id.* at 1056. Conversely, when the defendant is attempting to justify a downward departure, it is usually the defendant who bears the burden of persuasion. *See Urrego–Linares,* 879 F.2d at 1239. This is simply an extension of our pre-guidelines analysis in *United States v. Garcia,* 544 F.2d 681 (3d Cir. 1976), in which we held that "[o]ne who affirmatively seeks special favor at sentencing has the burden of proving why it should be bestowed." 544 F.2d at 685–86.

### B. Scope of Review

The Congress in drafting the Sentencing Guidelines' enabling legislation explicitly defined the courts of appeals' scope of review. The relevant code section states:

Upon review of the record the court of appeals shall determine whether the sentence

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable . . .;

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due def-

---

ultimate burden of persuasion once this burden

of production has been met.

**292**

erence to the district court's application of the guidelines to the facts.

18 U.S.C.A. § 3742(e) (West Supp.1989).

Judge Roth's finding that McDowell suborned testimony is, therefore, reviewable only to determine if it is clearly erroneous. The subornation of testimony constitutes obstruction of justice under the guidelines, *see* Sentencing Guidelines § 3C1.1, application note 1. Thus, the only determination that McDowell challenges is the ultimate factual determination that he suborned his son's testimony. Because this is solely a factual question, we are compelled by Congressional mandate to review it only to insure that it is not clearly erroneous. This is also consistent with our recent ruling in *United States v. Ortiz*, 878 F.2d 125 (3d Cir.1989), in which we reviewed a mixed question of fact and law under the Guidelines using the clearly erroneous standard because the question was found to be predominantly factual. On the other hand, our scope of review of the trial judge's application of Guidelines § 3E1.1 and calculation of the sentence is plenary.

### C. The Court's Finding that McDowell Suborned Testimony

█ Although there is certainly not overwhelming evidence to indicate that McDowell suborned his son's testimony, there is sufficient evidence to withstand this court's scrutiny. The evidence presented demonstrates that the younger McDowell did indeed perjure himself before the grand jury. Not only was his testimony inconsistent with his prior statements and the statements made by Steele, the gun repairman, but his father's subsequent testimony and guilty plea also directly refuted it.

Thus, the only question left to decide is what or who influenced McDowell III to perjure himself? On this count it is reasonable to infer that his father led him to commit perjury. First, the only motive he would have had to lie to the grand jury would have been to protect his father. Second, it would seem that he must have had some discussion with his father concerning the elder McDowell's plight. Otherwise, it would have been quite improbable that he could have invented such a "perfect" account, one which would entirely exculpate his father. At the time the younger McDowell gave his grand jury testimony, he had no way of knowing, other than from his father, for what purpose his grand jury testimony was to be used. The special agents at no time informed him of why they were questioning him or why he was being subpoenaed and there was no other evidence introduced which would explain his source of knowledge of his father's suspected gun activities. Additionally, the appellant had ample opportunity to influence his son; he spoke to him on the phone and accompanied him to the grand jury room. Given this evidence, we cannot say that the sentencing judge's finding, based upon a preponderance of the evidence, that McDowell suborned his son's grand jury testimony is clearly erroneous.

### IV.

█ We now turn to appellant's final contention, that the district court inaccurately calculated his sentence by refusing to adjust it downwards for his acceptance of responsibility pursuant to the Guidelines § 3E1.1. The court did not give McDowell any reduction for acceptance of responsibility, ruling that his subornation of testimony disqualified him from receiving this reduction.[2] *See* Sentencing Guidelines

---

**2.** We will assume, *arguendo* but quite possibly incorrectly, that had McDowell not suborned testimony, the trial judge would have adjusted his sentence downward for acceptance of responsibility. The judge based her decision to deny the adjustment solely on the obstruction of justice and it is unclear if she considered the substance of the acceptance of responsibility exception. It is quite possible that, considering the substance of the adjustment, she would have concluded that McDowell did not actually accept responsibility. Although McDowell contends that he is due the adjustment primarily because he pled guilty, this is manifestly not true. *See* Sentencing Guidelines § 3E1.1(c). The trial judge has the obligation to assess the totality of the situation in determining whether the defendant accepted responsibility. This includes not only what plea the defendant offered, but also whether the defendant exhibited remorse, whether he evaded capture, and many other factors. There is no set formula for making this determination. *See United States v.*

§ 3E1.1 application note 4 ("An adjustment under this section is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs justice (*see* § 3C1.1), regardless of other factors."). McDowell contends that he only obstructed justice in one of the three charges, and thus should have been credited for acceptance of responsibility on the other two charges.[3]

 The intent of the Sentencing Commission is that the Guidelines be applied like a formula; a court or presentence investigator should go down each guideline in order, making the necessary calculations. With respect to the adjustment for acceptance of responsibility, the Guidelines specify that this adjustment should be made only after the counts are combined. The application instructions, which also are to be followed in order, specify:

> (d) If there are multiple counts of conviction, repeat steps (a) through (c) [determining the appropriate offense level and applying adjustments for victim, role, and obstruction of justice] for each count. Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly.

> (e) Apply the adjustment as appropriate for the defendant's acceptance of responsibility from Part E of Chapter Three. The resulting offense level is the total offense level.

Sentencing Guidelines § 1B1.1. Paragraph (e) does not contemplate calculating acceptance of responsibility for each offense. Its directive is to adjust the combined offense

level as determined in paragraph (d), after the combined offense level has been calculated. Thus, the court properly calculated the criminal offense level under the Guidelines.

## V.

In sum, we hold that the trial judge committed no error in allowing the disclosure of the grand jury testimony, nor was its finding that McDowell suborned his son's testimony clearly erroneous. The court therefore properly calculated the sentence range under the Sentencing Guidelines.

Accordingly, the judgment and sentence of the district court will be affirmed.

*Harris,* 882 F.2d 902 (4th Cir.1989). Given that McDowell changed his plea several times and did not seem to have "demonstrated sincere remorse," Sentencing Guidelines § 3E1.1 background note, it seems quite likely that the judge would have determined, even absent the suborned testimony, that McDowell did not qualify for the downward adjustment.

**3.** Crediting McDowell on the other charges for acceptance of responsibility would reduce his offense level from fifteen to fourteen. Under Judge Roth's calculation, McDowell's offense levels were nine for the first weapons offense, eleven for the second weapons offense (the offense which was adjusted upward for the suborned testimony), and twelve for the gambling offense. Under the Guidelines combination procedure, Sentencing Guidelines § 3D1.4, these

are combined for a total offense level of fifteen, which, given his Criminal History Category, would yield a potential sentence of twenty-one to twenty-seven months. If the acceptance of responsibility adjustment is interpreted as McDowell urges, his offense levels would be seven, eleven, and ten, which would yield a combined offense level of fourteen and an authorized sentence of eighteen to twenty-four months. Although this would still authorize the twenty-four month sentence imposed, it would bring into question whether that would have been the sentence which the court would have imposed had it applied the Guidelines in the way which McDowell argues. *See* Sentencing Guidelines § 1B1.4 (providing guidance on how a sentence should be determined once the relevant range has been calculated).