936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
William CARGO, Defendant-Appellant, Cross-Appellee.
 Nos. 90-1168, 90-1169 and 90-1286.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant William Cargo appeals his conviction for conspiracy to distribute cocaine. The government cross-appeals the sentence. For the following reasons, we affirm the conviction and the sentence.
 
 I.
 
 2
 Suspicious that Larry White was dealing heavily in cocaine, the FBI conducted an investigation of him with the use of various recording devices from April 22, 1986 to May 21, 1986. The investigation confirmed that White was dealing in cocaine. On September 30, 1988, a federal grand jury returned a four count indictment against White and others, with count one charging White, Diana Grant, Duncan Pea and several other co-defendants with conspiracy to distribute cocaine (indictment no. 88-50066). On February 15, 1989, the court granted the government's motion to consolidate the aforementioned indictment with a separate indictment charging Duncan Pea with being a felon in possession of firearms (indictment no. 88-50087).
 
 
 3
 On April 6, 1989, during a pre-trial hearing, Grant moved for a severance and mistrial upon learning that her attorney had previously represented one of the government's witnesses. The motion was granted and Grant was appointed new counsel. Also, Duncan Pea was granted a mistrial after his wife shot him in the leg. The district court set a new trial date for Grant and Pea to be tried together. Meanwhile, White and four co-defendants were tried and convicted.
 
 
 4
 On June 30, 1989, the grand jury indicted William Cargo for conspiring with Larry White and others to distribute multi-kilograms of cocaine (indictment no. 89-50039). On July 28, 1989, the government moved to consolidate the indictment against Cargo with the earlier indictments against Grant and Pea. The court granted the government's motion for consolidation.
 
 
 5
 The consolidated trials for Cargo, Grant and Pea began on September 19, 1989, and concluded on October 13, 1989. The jury found Cargo, Grant and Pea guilty of conspiracy, but found Pea not guilty of being a felon in possession of firearms.
 
 
 6
 The presentence report recommended that Cargo's offense level be increased by three points pursuant to Sec. 3B1.1(b) of the United States Sentencing Guidelines because he was a manager or supervisor of criminal activity involving five or more persons. The report did not recommend an adjustment under Sec. 3C1.1 of the guidelines for obstruction of justice. The government filed an objection to the presentence report, contending that by introducing the perjured testimony of two witnesses, Cargo had willfully attempted to impede or obstruct the administration of justice within the meaning of Sec. 3C1.1. The sentencing judge rejected the government's request of an adjustment pursuant to 3C1.1, refused to increase the offense level pursuant to Sec. 3B1.1(b), and sentenced Cargo to 188 months in confinement, the minimum guideline sentence. This timely appeal followed.
 
 
 7
 The primary issues raised on appeal by the appellant are: (1) whether the trial court erred in consolidating the trials; and (2) whether the trial court erred in denying appellant's motion for mistrial.[1] The government cross-appeals on the issue of whether the trial court erred in refusing to increase Cargo's offense level pursuant to Sec. 3C1.1 of the United States Sentencing Guidelines.
 
 II.
 
 8
 The first issue is whether the trial court erred in consolidating Cargo's trial with that of Grant and Pea. Our standard of review here is abuse of discretion. United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied sub nom. Graewe v. United States, 474 U.S. 1068 (1986). The government moved the trial court to consolidate Cargo's trial pursuant to Rule 13 of the Federal Rules of Criminal Procedure. In its motion, the government stated that
 
 
 9
 While the language of the indictments is not identical, the conspiracies charged in No. 88-50066 [against, among others, White, Grant, and Pea] and No. 88-50087 [the indictment against Cargo] are the same; all the evidence offered against the defendants in No. 88-50066 would be admissible at a separate trial of Cargo on No. 88-50087, and vice versa.
 
 
 10
 J.App. at 11 (should be 89-50039 in quote above instead of 88-50087). A hearing was held on the motion to consolidate on August 24, 1989. During the hearing, the government reminded the trial judge, who had presided over the trial of White and the other co-defendants, that Cargo had been indicted after Larry White himself identified Cargo's voice on an incriminating tape during cross-examination. Moreover, the government argued that the conspiracies charged against Cargo, Grant and Pea were identical. The government argued that
 
 
 11
 All of the evidence admissible against Ms. Grant and Mr. Pea at a separate trial would be admissible against Mr. Cargo at his separate trial, and vice versa.
 
 
 12
 Government's Brief at 4 (emphasis in original). As noted earlier, the trial judge granted the motion to consolidate trials.
 
 Fed.R.Crim.P. 13 provides:
 
 13
 The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.
 
 
 14
 First, Cargo contends that the trial court erred in consolidating his indictment with Grant and Pea's for trial because the government failed to allege that "all of the offenses and the [d]efendants 'could have been joined in a single indictment.' " Defendant's Brief at 3 (emphasis in original). Such failure to so plead, Cargo contends, should have precluded the court from granting the motion to consolidate.
 
 Fed.R.Crim.Proc. 8(b) provides:
 
 15
 Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
 
 
 16
 It is clear from the language of Rule 8 that the trial judge was within his discretion when he granted the government's motion to consolidate trials. The government sufficiently alleged, both by motion and during the oral hearing, that Cargo, Grant and Pea "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Although the government did not quote this specific language, the language used by the government was adequate in this case. The conspiracy charged against Cargo was the same conspiracy charged against Grant and Pea. Moreover, the firearm charge against Pea arose out of the White conspiracy. Certainly the offenses and defendants "could have been joined in a single indictment or information." It is of significant import here that the trial judge was very familiar with each of the three indictments involved in this case, as he had presided over the White conspiracy trial.
 
 
 17
 Second, Cargo argues that the motion to consolidate should not have been granted because Cargo intended to call Grant and Pea as witnesses. Both Grant and Pea submitted affidavits stating that they intended to testify for Cargo. The trial judge carefully reviewed the Grant and Pea affidavits and concluded that "[n]either Pea's nor Grant's affidavits provide any justification for denial of consolidation." J.App. at 19 (footnote).
 
 
 18
 In Byrd v. Wainwright, 428 F.2d 1017 (5th Cir.1970), the court held that in order to gain a severance on grounds that a defendant have the opportunity to elicit co-defendants testimony, "[i]t must be shown that the testimony would be exculpatory in effect." Id. at 1020. See also United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988) (adopting without citing the Byrd test as one element in determining whether a severance should be granted when defendant intends to use testimony of co-defendants). The trial court applied Byrd to the Grant and Pea affidavits and determined that they were "devoid of any representation of exculpatory facts to which they would testify in a separate trial[.]" J.App. at 19 (footnote). See also, id. at 20 (footnote). Thus, the trial judge held that consolidation was warranted. After reviewing the affidavits, we likewise find no exculpatory material. We find no abuse of discretion.
 
 III.
 
 19
 The next issue raised by the appellant is whether the trial court erred in denying Cargo's motion for mistrial. "We review a district court's denial of a motion for a mistrial for abuse of discretion." United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied sub nom. Black v. United States, 111 S.Ct. 974 (1991).
 
 
 20
 At the close of the government's case, Cargo moved for a judgment of acquittal and/or a mistrial. The motion was denied. The motion was renewed at the close of all the evidence but was again denied. Cargo claims that the trial court should have granted his motion for mistrial on any one of the four following grounds: (1) the prejudicial, non-responsive remark of Russell Brown; (2) the prejudicial effect of the government displaying the gun for which Pea was indicted for illegally possessing a firearm; (3) the prejudicial effect of the court allowing the government to re-open its direct examination of Johnny Henderson; and (4) the trial court permitted the government to elicit hearsay evidence from Johnny Henderson. We find each of the grounds relied upon by Cargo to be meritless.
 
 
 21
 First, Cargo argues that statement made by Russell Brown in response to a question by the government unfairly prejudiced the trial. The response in question and its preceding question are as follows:
 
 
 22
 Q. Good morning, Mr. Brown. Mr. Brown, you have been asked questions regarding your own consumption of drugs. I think you indicated you never had a serious cocaine addiction problem, is that a fair statement to say?
 
 
 23
 A. Yes.
 
 
 24
 Q. So it would be false if I suggested that you had testified at the Johnny Henderson trial that you had a $1,000.00 cocaine habit?
 
 
 25
 A. You have me mixed up with another witness. You asked me that in Larry White's case.
 
 
 26
 THE COURT: No, no, that's not the answer. The answer is yes or no.
 
 
 27
 The jury will disregard that.
 
 
 28
 Just yes or no. You can also say I don't understand the question, or you can say I can't answer yes or no.
 
 
 29
 Q. So the answer is no?
 
 
 30
 A. Right.
 
 
 31
 J.App. at 91 (emphasis added). Cargo argues that the comment by Brown impermissibly interjected the conviction of Larry White into his trial.
 
 
 32
 The comment was indeed improper. The question, however, is whether the comment was so prejudicial as to warrant a mistrial. We conclude that it was not. The comment did not suggest whether White was convicted nor was it purposely elicited by the government. Defense counsel made no request for a cautionary instruction. Further, a motion for mistrial on this ground was not made until fifteen days later, when the government rested its case. Under these circumstances, we find no abuse of discretion.
 
 
 33
 Second, Cargo relies upon the alleged prejudicial effect of the government placing into evidence the gun for which Pea was indicted for illegally possessing a firearm without establishing a sufficient nexus to justify its relevance in connection with Cargo. The gun was found at Pea's residence. There was testimony that Pea had sold cocaine from his residence. Pea was involved in the White conspiracy, as was Cargo. Therefore, the trial judge was within his discretion in admitting the gun into evidence. Moreover, Pea was acquitted on the firearm possession charge. Thus, any prejudice to Cargo here was at best de minimis.
 
 
 34
 Third, Cargo argues that his motion for mistrial should have been granted because the trial court allowed the government to re-open its direct examination of Johnny Henderson. The trial court allowed the government to re-open its direct examination of Henderson "relative to discussing a so-called California cocaine connection had by Cargo with one Susan Ellis." Defendant's Brief at 17; see also J.App. at 117. Cargo argued below that such re-direct amounted to unfair surprise. In response, the court stated that
 
 
 35
 You've represented to the Court through a number of the exhibits on the exhibit list have a California connection. So the fact that there will be testimony regarding California should come as no surprise to anyone since the exhibits have already been listed that reflect trips to California.
 
 
 36
 J.App. at 117-18. The trial judge considered the objection but nevertheless concluded that no element of surprise was present. Again, we find no abuse of discretion.
 
 
 37
 Finally, Cargo asserts that the trial judge should have granted a mistrial because the court allowed the government to elicit hearsay testimony from Henderson concerning whether Susan Ellis is related to Cargo. See id. at 118-22. Defense counsel objected to this testimony on grounds of hearsay; but, the trial court overruled the objection without stating its reasoning. The government contends that the testimony was admissible under Rule 803(19) of the Federal Rules of Evidence. Rule 803(19) provides:
 
 
 38
 Reputation among members of a person's family by blood, adoption, or marriage, or among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history.
 
 
 39
 This testimony was admissible under 803(19). Alternatively, we conclude that any error here was harmless and not so prejudicial as to warrant a mistrial.
 
 
 40
 In sum, Cargo's grounds for mistrial, singly or in combination, do not warrant a mistrial.
 
 IV.
 
 41
 The government cross-appeals the trial court's sentence on the ground that the trial court erred in refusing to increase Cargo's offense level pursuant to Sec. 3C1.1 of the Sentencing Guidelines. Our review here is for clear error. United States v. Hassan, 927 F.2d 303, 309 (7th Cir.1991); United States v. Garcia, 902 F.2d 324, 326 (5th Cir.1990); United States v. Williams, 897 F.2d 1034, 1041 (10th Cir.1990), cert. denied, 59 U.S.L.W. 3782 (1991).
 
 Section 3C1.1 of the guidelines provides:[2]
 
 42
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.
 
 
 43
 At trial, the government produced tape recordings of cocaine related conversations between White and Cargo. Cargo's voice was identified by seven government witnesses. In defense, Cargo called two witnesses as "voice identification experts," his son William Campbell and a friend, Arthur Armstrong. Both Campbell and Armstrong testified that they were very familiar with Cargo's voice and that the voice on the incriminating tapes alleged to have been the voice of Cargo was not Cargo's voice. The jury found Cargo guilty.
 
 
 44
 As noted earlier, the presentence report did not recommend an increase in Cargo's offense level pursuant to Sec. 3C1.1. Arguing that Cargo's son and Armstrong committed perjury at trial and that by calling them as witnesses Cargo had willfully attempted to impede or obstruct the administration of justice within the meaning of Sec. 3C1.1, the government objected. The government contended that both witnesses lied under oath, that Cargo knew that they were lying, and that Cargo's purpose in calling them as witnesses was to deceive the court. J.App. at 48. The government conceded that
 
 
 45
 there was no direct evidence that [Cargo] had coerced, coached, or prompted either witness to testify falsely, but argued that the act of calling them as witnesses and asking them questions which could only have incriminated him if answered truthfully was 'conduct calculated to ... deceive' the jury.[3]
 
 
 46
 Government's Brief at 7 (emphasis in original). The sentencing judge was concerned as to " 'whether Mr. Cargo asked this witness to do that [testify].' " Id. The trial judge stated:
 
 
 47
 With regard to the impediment of justice I believe there was an impediment of justice. I believe there was perjury in the trial. However in order for me to make the upward adjustment, I would have to become involved as to who precisely made the decision to put those witnesses on the stand and who knew what. And I do not propose to intrude in the relationship between you and your attorney or your attorney and yourself. It's sufficient that I find those witnesses never should have testified and bad judgment was exercised in allowing them to testify. But as to whose judgment it was, I'm not going to get into that because I think the sentence I'm going to impose is sufficiently severe all the way around to include all of the possible factors that go into sentence making.
 
 
 48
 Id. at 7.
 
 
 49
 In United States v. Acosta-Cazares, 878 F.2d 945, 953 (6th Cir.), cert. denied, 110 S.Ct. 255 (1989), this court applied Sec. 3C1.1 because the defendant testified falsely in his own defense. Section 3C1.1 has also been applied in analogous circumstances. See, e.g., Hassan, 927 F.2d at 309 (upholding application of Sec. 3C1.1 where defendant lied repeatedly); Garcia, 902 F.2d at 326 (upholding application of Sec. 3C1.1 where defendant consciously misrepresented his prior criminal record during presentence investigation); Williams, 897 F.2d at 1040-41 (upholding application of Sec. 3C1.1 where defendant supplied false information during interview with pretrial services); United States v. Irabor, 894 F.2d 554, 556 (2d Cir.1990) (upholding application of Sec. 3C1.1 where defendant "tore up and discarded his bank records and false identification papers. He also falsely identified himself on two occasions to authorities who were investigating the crimes for which he was ultimately charged."). In each of these cases, however, it was clear that the defendant himself had engaged in some obstructive conduct.
 
 
 50
 The case most similar to the one at hand is United States v. McDowell, 888 F.2d 285 (3d Cir.1989). In McDowell, defendant plead guilty to several charges. Prior to sentencing, the probation officer recommended that defendant's offense level be increased two levels for obstructing justice because defendant's son testified inconsistently before the investigating agents and the grand jury. The probation officer asserted that the defendant had suborned untruthful testimony by his son before the grand jury. Id. at 287.
 
 
 51
 Before the grand jury, the defendant's son testified that the gun confiscated by the authorities belonged to him and not his father. If this testimony was correct, it would have completely exculpated young McDowell's father. However, the younger McDowell's grand jury testimony conflicted directly with answers he had given to Treasury Department agents four days before his grand jury testimony. He told the agents that he had never owned a gun nor had he ever purchased a firearm. The accuracy of the younger McDowell's statement to the agents was independently supported by other evidence.
 
 
 52
 The defendant admitted that his son's grand jury testimony was perjured but denied that he did anything to induce the perjury. The trial court found that the defendant had suborned his son's testimony and increased his offense level for obstructing justice. The government contends that McDowell mandates that we reverse the trial court's failure to increase Cargo's offense level pursuant to Sec. 3C1.1. We disagree.
 
 
 53
 "[A] sentencing court considering an adjustment of the offense level ... need only base its determination on the preponderance of the evidence with which it is presented." McDowell, 888 F.2d at 291 (citations omitted). Further, the burden of persuasion rests upon the party seeking the adjustment. Id. "This prevents the criminal defendant from having to 'prove the negative' in order to avoid a stiffer sentence." Id. Finally, as noted earlier, the lower court's finding that Cargo did not suborn testimony or that there was no showing by a preponderance of the evidence that he suborned testimony is subject to the clearly erroneous standard. Id. at 292.
 
 
 54
 The sentencing judge was cautious so as not to unjustly punish Cargo for conduct to which he was not charged. In this particular case, where there was no direct evidence that Cargo had obstructed justice, we find no clear error in the sentencing judge's decision.
 
 V.
 
 55
 Accordingly, we AFFIRM the conviction and the sentence of the district court.
 
 
 
 [1]
 Cargo raises other issues on appeal. We have carefully considered these issues and find them to be without merit
 
 
 [2]
 Effective November 1, 1990, section 3C1.1 provides:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 [3]
 Prior to the November 1, 1990 amendments, the commentary to Sec. 3C1.1 provided that:
 This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.