**UNITED STATES of America**

v.

**Michael SODANO.**

**Crim. Nos. 91–116, 92–427.**

United States District Court,
D. New Jersey.

Aug. 27, 1993.

842

Timothy J. McInnis, Asst. U.S. Atty., Newark, NJ, for the U.S.

Peter C. Harvey, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for defendant Michael Sodano.

GERRY, Chief Judge.

Michael Sodano pled guilty on July 31, 1992 to Count Two of an indictment No. 91–116, charging that he, in his capacity as an employee of Dover General Hospital, removed from the hospital x-ray film having a value of at least $5,000 and sold it for his own profit. Sodano also pled guilty on the same day to a one-count information, charging that he accepted and agreed to accept money from Rickey Delasandro, intending to be influenced and rewarded in connection with the sale of x-ray equipment and the award of service contracts having a value of $5,000 or more in connection with business transactions between Community Medical Hospital and Apple Medical Systems. Both of these acts violated 18 U.S.C. § 666. Although Information No. 92–427 charged defendant with taking bribes and kickbacks, the parties have stipulated that the relevant guideline provision is § 2B1.1, dealing with theft, embezzlement, receipt of stolen property and property destruction. *See Addendum to Plea Agreement with Michael Sodano,* Schedule "A". The parties are before the court to resolve a dispute as to the extent to which Sodano's offense level should be increased due to the loss sustained by his victims, Dover General Hospital and Community Medical Hospital.

### A. Burden of Proof

There is an initial dispute as to who bears the burden of proof. The Government argues that Sodano has a burden of "show[ing] that [the presentence report figure] is materially false," and that, in the absence of such a showing, this court should accept the presentence report. *See Government's Letter of March 1, 1993* at 3 (citing *United States v. Badarocco,* 954 F.2d 928 (3d Cir.1992); *United States v. McDowell,* 888 F.2d 285 (3d Cir.1989); *United States v. Asper,* 753 F.Supp. 1260 (M.D.Pa.1990), *aff'd,* 941 F.2d 1203 (1991); *United States v. Taxacher,* 902 F.2d 867 (11th Cir.1990)). This is misleading. The leading case on this issue in the Third Circuit, *United States v. McDowell,* does place a burden on the party challenging a conclusion in the presentence report, but this is only a burden of *production,* to produce "evidence that tends to indicate that the report is incorrect or incomplete." *United States v. McDowell,* 888 F.2d at 290, n. 1. The defendant Sodano has met this burden of production in the evidentiary hearing. The *McDowell* court holds, however, that the burden of "ultimate persuasion should rest upon the party attempting to adjust the sentence. Thus, when the Government attempts to upwardly adjust the sentence, it must bear the burden of persuasion." *Id.* at 291. *See also United States v. Badaracco,* 954 F.2d 928, 935 (3d Cir.1992). Here, the Government is the party seeking to establish that the base level of four should be increased by an established loss, and therefore under *McDowell* the Government must bear the burden of proof. Contrary to the Government's position, the presentence report in itself creates no presumption of correctness that the defendant must overcome, and the cases do not so hold. Therefore, we find that the Government has the burden of showing the loss sustained by the victims by a preponderance of the evidence.

### B. Calculation of Loss

There is only one disputed issue to be resolved by the court regarding Mr. Sodano's sentence. This is how to evaluate the loss

sustained by the victims, Dover General Hospital and Community Medical Center, for purposes of enhancing Sodano's sentence. The parties have stipulated that the applicable guideline is § 2B1.1 (Theft, Embezzlement, Receipt of Stolen Property, and Property Destruction), which provides a Base Offense Level of 4. Under § 2B1.1, the base level is to be increased anywhere from one to twenty levels depending upon the loss sustained by the victim. Application note 2 defines "loss" as "the value of the property taken, damaged, or destroyed." Under Application note 3, "[t]he loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation."

There are three separate incidents that the court is being asked to consider in enhancing Mr. Sodano's sentence. The first, and most straightforward, involves the theft of x-ray film from Dover General Hospital that occurred during the years that the defendant was employed by Dover General. The dispute involves the proofs regarding the amount of film Sodano stole during his tenure at Dover General, since the value of the film stolen depends upon the amount stolen. The second and third incidents involve Sodano's activities at Community Medical Center. The first of these involves a sale by Community Medical Center of used medical equipment to Apple Medical Systems. The Government contends that the equipment was sold for $39,500.00 less than fair market value, and that this difference should be considered to be a "loss" to Community Medical Center for purposes of increasing the defendants offense level. The third incident involves kickbacks that Sodano received from Apple Medical Systems for suggesting to officials at Community Medical Center that Apple should be awarded a contract to service medical equipment. The Government contends that the bribes and kickbacks also represent a "loss" to Community Medical Center that should be used to enhance Sodano's sentence under § 2B1.1.

1. X–Ray Film Theft at Dover General Hospital

While employed at Dover General Hospital, Michael Sodano stole an indeterminate amount of x-ray film from the Dover General supply room and sold it to Lester Kurylo. The Government argues that the court should accept the presentence report calculation of $96,000 as the loss attributable to Sodano's thefts at Dover General. They support this figure in two ways. First, the Government argues that the defendant's own statements quoted in the presentence report and recorded in a taped conversation with an informant support the $96,000 figure; second, it argues that figures compiled showing an increase in the cost of x-ray procedures for the years during which Sodano was employed at Dover General can be extrapolated to establish an amount of loss greatly in excess of the $96,000 figure arrived at in the presentence report.

The Government relies on the following statement by Sodano:

The overwhelming majority of the film which I unlawfully removed from Dover occurred in 1983, 1984 and 1985. During this time period, Kurylo paid me approximately $10,000 to $12,000 each year. Beginning in 1985, my removal of film practically ended due to the investigation that occurred at St. Barnabas Medical Center which ultimately resulted in the arrest of one of its employees for the theft of x-ray film. Thus, between January 1986 and the end of my employment at Dover General in January 1988, I removed no more than seven cases of x-ray film totalling approximately $800 per case. By January 1987, I stopped stealing film from Dover General. I received approximately $2,800 from Kurylo for this film, which represented 50% of the film's value.

Amended Presentence Report, p. 8, ¶ 35. The Government argues that this statement supports a finding that Sodano received $12,000 per year from Kurylo for a period of four years, or a total of $48,000. Since Sodano also stated that this amount represented 50% of the film's value, the Government argues that Sodano can be charged with a $96,000 loss to the hospital. The Government also points to a transcript of a taped conversation between Sodano and Kurylo (by then a Gov-

ernment informant), in which Sodano acknowledges that he may have received between $12,000 and $15,000 in a year from Kurylo.

We disagree that the quoted statements establish a $96,000 loss to Dover General. Sodano's statement in the presentence report only establishes that he received between $10,000 and $12,000 for the years 1983, 1984 and 1985, and that he received a further $2,800 between January 1986 and January 1988. While Sodano's statement could establish a profit of anywhere between $30,000 and $36,000 for the years 1983 through 1985, the higher figure is supported by Sodano's taped statement to Kurylo in January, 1990. Therefore, based upon the statements admitted into evidence, we assess the loss to Dover General at $36,000 + $2,800 = $38,800 × 2 = $77,600.

The Government has also offered an analysis of the amount of film used during Sodano's employment at Dover General and offered the analysis as evidence that Sodano stole more than $92,000 worth of film. The Government's proof looks at the average cost to the hospital of each x-ray procedure for a specific year, and then compares the average cost of the procedure during the years Sodano was stealing x-ray film to the average cost per procedure during 1985, which the Government offers as a baseline year. The Government then argues that the court can multiply the differences between these two figures by the total numbers of tests performed and come up with a reasonable estimation of the total loss caused by Sodano's thefts.

The Government's argument is flawed in several respects. First, they have not tied variations in the costs of x-ray procedures to Sodano's thefts. The Government's proffer does not take into account the price of units of x-ray film, or any variations in the price charged. Alfred Bacchetta, Dover General's controller, testified that the price of x-ray film could have increased or decreased in the relevant years, and that the cost per procedure might vary according to the doctor performing the tests or the efficiency of the equipment involved. T67:18–T68:21. Bacchetta also testified that the film purchased in one year might not be used until the following year. T70:19–23. Furthermore, the Government has not established that the various radiology "procedures" all use the same amount of x-ray film. If different procedures used different amounts of film, fluctuations in the average cost per procedure may be more dependent upon fluctuations in the number of CAT scans performed in different years. Testimony at the hearing also established that Sodano was not the only person with access to the room where the film was stored. T115:7–T117:8. The Government has therefore failed to meet its burden of demonstrating the relevance of any variation in cost of procedures in determining the amount of film stolen by Sodano during his employment at Dover General. We will thus disregard the Government's proffer and base our determination of the loss sustained by Dover General Hospital solely upon Sodano's statements.

2. Kickbacks at Community Medical Center

Sodano left Dover General in January, 1988 for a position as Director of the Radiology Department of Community Medical Center. Sodano has pled guilty to accepting bribes during the course of his employment at Community Medical Center. Sodano accepted from Rickey Delasandro, owner of Apple Medical Systems, kickbacks of $26,500, in the form of consulting fees, related to Apple Medical's purchase of three pieces of used x-ray equipment. Sodano also accepted kickbacks of approximately $18,000 from Delasandro on several service contracts awarded to Apple Medical Systems. The Government wants this court to consider these bribes in determining the total "loss" to Community Medical Center under § 2B1.1.

The presentence report has assigned a total "loss" to Community Medical Center of $57,500. *Presentence Report* ¶ 29. It arrives at this figure by adding the loss to Community Medical Center on the sale of used equipment (using the figure of $39,500 supplied by the Vice President and Corporate Counsel of Community Medical Center) to the $18,000 in kickbacks received by Sodano. *Id.* The Government argues that this figure is supported by the evidence. Sodano

argues that the evidence shows that Community Medical Center has sustained no "loss" within § 2B1.1.

The Government argues first that we may attribute the total amount that Sodano received in bribes and kickbacks, $57,500, as a "loss" to Community Medical Center. Although the Government concedes that § 2B1.1 does not provide for such an analysis, they suggest that we look to Guideline § 2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right) by analogy. Guideline § 2C1.1 provides that "loss" can be the "value of the benefit received." *Government's Letter of March 1, 1993* (citing Sentencing Guideline § 2C1.1, Application note 2). Therefore, the Government has argued, we can use the amount of bribes admittedly taken by Sodano to assess the "loss" to Community Medical Center under § 2B1.1. The Government also argues that Sodano has admitted that he intended to receive over $60,000 in bribes from Apple Medical Systems, and that under § 2B1.1, the court can take into account intended loss as well as actual loss.

■ Under the circumstances, we reject this method of assessing loss under § 2B1.1. Sodano has argued persuasively that, insofar as the Government has stipulated in the plea bargain agreement that § 2B1.1 is the relevant guideline section, it is inappropriate for the court to look to guideline sections other than § 2B1.1 to increase Sodano's sentence. The definition of loss in § 2B1.1 is different than that contained in § 2C1.1, in that the latter discusses "loss" in terms of "benefit received," whereas the former limits its definition of "loss" to the "value of the property taken, damaged, or destroyed." Under Third Circuit precedent, the Government is to be held to the terms of a negotiated plea agreement. *United States v. Badaracco*, 954 F.2d 928, 941 (3d Cir.1992). Where, as here, the Government has stipulated that a specific guideline provision should be used to calculate the defendant's sentence, it would be inappropriate for the court to deprive the defendant of the benefit of his bargain by applying other provisions of the guidelines by analogy.

■ Since we will not apply the bribes received by Sodano to determine "loss" sustained by Community Medical Center, we will not increase Sodano's total offense level for the bribes paid in association with the service contracts. The Government has offered no evidence to establish a loss to Community Medical Center based upon the service contracts other than the bribe admitted to by Sodano. Since the Government has failed to establish that Community Medical Center paid Apple Medical Systems any more for the service contracts than it would otherwise have paid, it has not established any "loss" with regard to those contracts.

With regard to the equipment sale, the Government argues that Community Medical Center sustained a $39,500 loss on the sale of used x-ray equipment to Apple Medical Center. At the hearing, the Government submitted an appraisal of the value of the various pieces of equipment sold by Community Medical to Apple. *Government Exhibit G-3.* The appraiser found that the value of the equipment exceeded the sale price by $39,500. *Id.*

The defense argues that Community Medical Center has sustained no loss on the sale of used x-ray equipment because the equipment was sold at or above fair market value. In support of this assertion, the defense offered the testimony of Gerald Arcuri, Director of Northeast Sales for Prime Leasing. Arcuri testified that he had seen the General Electric CT 8800 Scanner in October 1988, shortly before its sale, and that in his opinion the value of the scanner was $50,000, or $10,000 less than the hospital had received for it from Apple Medical Systems. T90:11–22. He testified that the $80,000 figure suggested by the Government would be a reasonable price for the scanner installed and warranted but would be excessive for the mere sale of the used equipment. T90:23–T91:16. Arcuri also testified that, based upon his examination of the equipment, the $6,500 received by Community Medical Center for sale of a General Electric Maxie Camera was also in excess of its actual value, because the crystal was hydrated, and a replacement crystal would have cost the buyer approximately $30,000. T91:21–T92:16. He

testified that, in his opinion, the camera was worth between $2,000 and $3,000. T92:17–20. Arcuri testified that the Picker GX1050, sold to Apple Medical Systems for $6,000, was probably worth between $1,000 and $2,000. T93:3–25. He also testified that the Picker table, tube stand, collimator table, given to Apple Medical Systems for free, had no value at the time of disposal. T94:18–T95:3.

Sodano also offered into evidence a letter written by Edward J. Dannic, formerly a CT/X–Ray Specialist with GE Medical Systems. *Defendant's Exhibit D–1.* In this letter, Dannic, in agreement with Arcuri and based upon his personal examination of the equipment, stated that the value of the CT 8800 Scanner sold to Apple Medical Systems was equal to or less than the $60,000 received by Community Medical Center.

The Government's burden is to establish Community Medical Center's loss by a preponderance of the evidence. *United States v. McDowell,* 888 F.2d 285, 291 (3d Cir.1989). The Government has not sustained its burden of showing by a preponderance of the evidence that Community Medical Center sustained an ascertainable loss on the sale of the used medical equipment. Although the Government submitted the report of an independent appraiser stating that the equipment was sold at $39,500 less than fair market value, there is no evidence that the appraiser ever saw the equipment that he was evaluating. The appraisal states that the suggested values "are based upon our experience with such equipment and represent the value at the time of disposal of the equipment." *Government's Exhibit G–3.* The expert witnesses for the defense, on the other hand, testified in great detail as to the basis for their lower estimates, including such factors as costs of installation and deinstallation, warranties, and actual inspection of the equipment in question. The testimony of Mr. Arcuri that several specific pieces of equipment were either in poor condition or obsolete was unrebutted by the Government. Based upon this, we find that the Government has failed to establish by a preponderance of the evidence that Community Medical Center sustained a "loss" within § 2B1.1.

While Sodano admittedly received a bribe in connection with the sale of these items, that in itself is not a basis for increasing his sentence within the stipulated guideline section.

## CONCLUSION

The Government has proven by a preponderance of the evidence that Dover General Hospital sustained a $77,600 loss. The Government has failed to prove by a preponderance of the evidence that Community Medical Center sustained any loss. Therefore, Sodano's offense level will increased by 8 levels to account for the loss to Sodano's victims.